### State v. McDonald
*[Cite as 4 AOA 46]*

Case No. 11228
Montgomery County (2nd)
Decided June 5, 1990

Lee C. Falke, Prosecuting Attorney of Montgomery County, By: Ted E. Millspaugh, Assistant Prosecuting Attorney, Appellate Division, Montgomery County Courts Building, 41 N. Perry Street, Dayton, Ohio 45422, for Plaintiff-Appellee.

D.K. Wehner, 2040 First National Plaza, Dayton, Ohio 45402, for Defendant-Appellant.

BROGAN, J.

Appellant, Joe McDonald, was tried as an adult and convicted of one count of Aggravated Murder (prior calculation and design), one count of Aggravated Murder (felony murder), one count of Aggravated Robbery, one count of Aggravated Burglary, and one count of Child Endangerment. The appellant was sentenced and he timely appealed raising three assignments of error.

McDonald contends the juvenile court abused its discretion in relinquishing jurisdiction over him pursuant to Juv. R. 30. He also contends that the juvenile court abused its discretion and violated his rights to due process of law and to the effective assistance of counsel by denying his request to appoint additional expert witnesses for the amenability hearing. Lastly, appellant contends he was denied the effective assistance of counsel when his court appointed counsel failed to file a motion to suppress certain statements allegedly made by him to police officers.

On February 8, 1988, Alton Cooley found the body of his twelve year old son, Antonio "Pooh" Cooley lying in his bedroom. It was determined that the child had suffocated to death in having been forced to swallow lighter fluid and "Raid" a bug repellant and by having had a plastic bag placed over his face.

The investigation of the child's death revealed that the appellant had become involved in an argument on February 1, 1988 with Pooh when the child refused to permit the appellant and a David Burns to enter his apartment. After the appellant was denied entry, he threw a brick through Pooh's bedroom window.

A week later, the appellant and Jermol Cain asked Pooh if they could come to Pooh's house to use Pooh's VCR to watch a tape the appellant

had rented. Pooh informed the appellant that he wasn't allowed to have visitor's in his father's absence and he couldn't get into his apartment because his father had changed the door locks.

After some badgering by appellant and Cain, Pooh, Cain, the appellant, and two young girls, Melissa Harrison and Angela Covington, went to Pooh's apartment. Appellant gained entry through a kitchen window and unlocked the apartment for the others.

Later Pooh and the appellant got in an argument when Pooh insisted that everyone leave. Appellant informed Pooh that he had expended three dollars for the video and that he was going to watch it "or kick Pooh 's butt." (Tr. 114,250). When appellant refused to leave, Pooh went and got the landlord and identified the appellant as the person who had broken the bedroom window. The appellant informed Pooh that he was going to get him for informing the landlord of appellant's damaging the window. (Tr. 252).

The group later met David Burns who was informed of the previous events. The appellant, Burns, and Cain talked of taking Cooley's VCR, stereo, and Atari game. Both Melissa Harrison and Angela Covington testified that appellant said he was going to kill Cooley. (Tr. 255, 312, 313).

Appellant requested that Cain and the girls return to Pooh's apartment and keep Pooh occupied in his bedroom while Burns and appellant gained access to Pooh's apartment. Subsequently, appellant and Burns entered Pooh's apartment and took him into a separate bedroom and began beating him.

Angela heard Pooh yell "Leave me alone." Subsequently when there was a knock at the front door they observed blood all over Pooh 's face. Cain observed the defendant get a can of bug spray and a can of charcoal lighter. Angela heard Pooh cry out, "Stop, leave me alone. I'll do anything, just don't hurt me." Cain heard Pooh scream, "I'll drink it, Just leave me alone," and Pooh's screams of "Don't kill me."

Later appellant came into the bedroom to Cain, Harrison, and Covington and announced, "We've done it." He also stated, "I killed him, and Y'all didn't think I was going to do it, did you?" (Tr. 132, 268, 327). Harrison and Covington found Pooh lying on his father's bed with a plastic bag over his head.

When the appellant noticed that Pooh was still moving, he told Burns, "this nigger ain't dead. I told you we should have stabbed him."

(Tr. 269). Burns then put a pillow case over Pooh's face and laid on it.

Appellant then removed the victim's VCR, Burns took the stereo, and Cain the Atari game. The following day Covington and Harrison reported the matter to their school principal. The appellant's fingerprints were found on the kitchen window and on the can of bug spray. After appellant was arrested he admitted killing Cooley to a fellow inmate in the juvenile detention center. Appellant gave a statement to Officer Wade Lawson of the Dayton Police Department after his arrest. He stated that in attempting to take Pooh's VCR, Pooh came at him with a butcher knife. He said Burns subdued Cooley and the appellant put a rag over the victim's face. He stated Burn's placed the plastic bag over Cooley's face which appellant claimed he later removed. He said they then removed the VCR, a TV, Atari and something else. (Tr. 231).

R.C. 2151.26 and Juv. R. 30 set forth the procedure to be followed and the determinations to be made before the juvenile court can relinquish jurisdiction and transfer a case to common pleas court for prosecution as an adult. In that regard R.C. 2151.26 provides in relevant part:

"(A)(1) Except as provided in division (A)(2) of this section, after a complaint has been filed alleging that a child is delinquent by reason of having committed an act that would constitute a felony if committed by an adult, the court at a hearing may transfer the case for criminal prosecution to the appropriate court having jurisdiction of the offense, after making the following determinations:

"(a) The child was fifteen or more years of age at the time of the conduct charged;

"(b) There is probable cause to believe that the child committed the act alleged;

"(c) After an investigation, including a mental and physical examination of the child made by a public or private agency, or a person qualified to make the examination, that there are reasonable grounds to believe that:

"(i) He is not amenable to care or rehabilitation or further care or rehabilitation in any facility designed for the care, supervision, and rehabilitation of delinquent children;

"(ii) The safety of the community may require that he be placed under legal restraint, including, if necessary, for the period extending beyond his majority."

"Juvenile R. 30 provides in relevant part:

"(A) Preliminary hearing. In any proceeding where the court may transfer a child fifteen or

more years of age for prosecution as an adult, the court shall hold a preliminary hearing to determine if there is probable cause to believe that the child committed the act alleged and that such act would be a felony if committed by an adult. Such hearing may be upon motion of the court, the prosecuting attorney or the child.

"(B) Investigation. If the court finds probable cause, it shall continue the proceedings for full investigation. Such investigation shall include a mental and physical examination of the child by the Ohio Youth Commission, a public or private agency, or by a person qualified to make such examination. When the investigation is completed, a hearing shall be held to determine whether to transfer jurisdiction. Written notice of the time, place and nature of the hearing shall be given to the parties at least three days prior to the hearing.

"(C) Prerequisites to transfer. The proceedings may be transferred if the court finds there are reasonable grounds to believe:

"(1) The child is not amenable to care or rehabilitation in any facility designed for the care, supervision and rehabilitation of delinquent children; and

"(2) The safety of the community may require that the child be placed under legal restraint for a period extending beyond the child's majority.7

"* * * *

"(E) Determination of amenability to rehabilitation. In determining whether the child is amenable to the treatment or rehabilitative processes available to the juvenile court, the court *shall* consider:

"(1) The child's age and his mental and physical health;

"(2) The child's prior juvenile record;

"(3) Efforts previously made to treat or rehabilitate the child;

"(4) The child's family environment; and

"(5) School record."

Appellant in his brief states he has no quarrel with the probable cause finding that he committed the felonious acts charged in the juvenile complaint. He contends the written decision of the juvenile judge fails to sufficiently state the reasons why the appellant was not amenable to rehabilitation pursuant to the factors found in Juv. R. 30(E)(1) thru (5). *See* Juv. R. 30(G).

In the written decision, the court stated he had considered the factors found in Juv. R. 30(E). The court also stated the following:

"The Court finds that there has been social maladjustment. There has been evidence that Joe McDonald carried a gun; that he shot it at one of the girls involved in this case. There is evidence of an assault and theft and, further, the psychologist's report shows that he demonstrates no remorse for what he has done; that he is proud of himself, even after killing a human being. Dr. Owens states that the prognosis for rehabilitation is poor to guarded at best. The Court feels that Joe McDonald will not accept the rehabilitative ministrations of the juvenile court and, therefore, has certified Joe McDonald to the adult court."

In *Staten* v. *Reuss* (Aug. 7, 1981), Wood App. Case No. 81-26, unreported, the Wood County Court of Appeals reversed the conviction of a juvenile transferred for prosecution as an adult for the failure of the juvenile court to follow Juv. R. 30(G) to state with specificity the reasons the court found there were no reasonable grounds to believe the juvenile was not amenable to rehabilitation. The court noted it is incumbent upon the juvenile court to state its findings as to amenability to permit meaningful review of the sound discretion of the juvenile court. Citing, *Kent* v. *United States* (1966), 383 U.S. 541 at 561. In *State* v. *Oviedo* (1982), 5 Ohio App. 3d 168, a different panel of the Wood County Court of Appeals held pursuant to Juv. R. 30(G), an order of transfer is sufficient if it demonstrates that the statutory requirement of "full investigation" has been met and that the issue has received the full attention of the juvenile court.

In *Kent* v. *United States, supra*, the United States Supreme Court held that it is incumbent upon the Juvenile Court to accompany its waiver order with a statement of the reasons therefor. The court held that the statement need not be formal or necessarily include findings of fact. The Court held the statement should be sufficient to demonstrate a full investigation had been met, the Court carefully considered the matter, and the order is specific enough to permit meaningful review.

In *State* v. *Douglas* (1985), 20 Ohio St. 2d 34, the Ohio Supreme court held in a *per curiam* opinion that neither R.C. 2151.26 nor Juv. R. 30 requires the juvenile court to make written findings as to the five factors listed in Juv. R. 30(E). In a footnote, the Court noted that the juvenile court sufficiently stated its reasons for appellee's transfer as required by Juv. R. 30(G) although the juvenile court's journal entry relinquishing

jurisdiction was couched in the conclusory language of R.C. 2151.26.

We are satisfied that the juvenile court's transfer order meets the requirements of Juv. R. 30(G) and the constitutional mandates of due process as enunciated in *Kent* v. *United States, supra.*

Appellant contends the juvenile court abused its discretion in finding him not amenable to rehabilitation as a juvenile. He lists the following factors which support amenability, to wit, appellant was only 15 at the time of the alleged criminal acts, no serious problems were demonstrated in appellant's school record, he had only one prior delinquency adjudication; he was of average intelligence; he had a good relationship with his family; he worked part-time while in school; the court's own psychologist admitted that appellant had the potential for rehabilitation, the court's probation officer recommended treatment of the appellant in the juvenile system.

Appellant contends the preponderance of the evidence before the juvenile court supported his amenability for treatment as a juvenile. He contends the juvenile court found him not amenable solely because of the heinous nature of the crimes perpetrated by him.

Dr. James Owens, the Court's Chief Psychologist, testified he had been employed by the Montgomery County Juvenile Court for 25 years. Owens stated he administered several psychologist tests to the appellant and personally interviewed the appellant. Owens stated he also reviewed a social history of the appellant as well as the police reports of the Cooley homicide. Owens opined that appellant's prognosis to succeed in a juvenile facility and its rehabilitative programs is no better then poor to guarded, at best. (Tr. 24, Amenability Hearing).

Owens also indicated that during his interviews with the appellant, Joe McDonald never expressed any feeling of remorse over the death of Pooh Cooley. Owens also indicated that McDonald's psychological tests "suggested" that appellant was intensely hostile and destructive, and had a "sadistic potential." (Tr. 23, Amenability Hearing). Owens states the tests also revealed that appellant had a need to minimize his underlying problems in order to make himself look better. (Tr. 23).

On cross-examination, Dr. Owens admitted he was unfamiliar with the rehabilitative programs available from the State of Ohio.

What constitutes "reasonable grounds" for relinquishing jurisdiction under R.C. 2151.26(A)(3) is within the sound discretion after an investigation is made. *State* v. *Carmichael* (1973), 35 Ohio St. 2d 1. There is no requirement that each of the five factors in Juv. R. 30(E) be resolved against the child before the court enters a proper transfer order, so long as the totality of the evidence supports a finding that the juvenile is not amenable to treatment. *State* v. *Douglas, supra,* at 37.

In *State* v. *Watson* (1989), 47 Ohio St. 3d 93, the Ohio Supreme Court held that in deciding whether to relinquish jurisdiction over a child, a juvenile court may consider the seriousness of the alleged offense when determining, pursuant to Juv. R. 30(C)(1) if the juvenile is "not amenable to care or rehabilitation" in the juvenile justice system. Watson was tried as an adult and convicted of involuntary manslaughter and armed robbery in the beating of a youth. He was fifteen at the time of the offense, was an average student, who had not caused major discipline problems in his school. He had no prior juvenile record. Justice Brown noted the following on behalf of an unanimous court:

"Rule 30 calls for a broad assessment of individual circumstances. Mechanical application of a rigidly defined test would not serve the purposes of the public or the juvenile. Further, reduction of the bindover decision to a formula would constrain desirable judicial discretion. We agree with appellant that Rule 30(E) requires consideration of all the listed factors, but we discern nothing in the rule, or in the policy it serves, which prohibits consideration of other relevant factors.

"The seriousness of the alleged act is relevant to 'the assessment of the probability of rehabilitating the child within the juvenile justice system' for a number of reasons.

"As the juvenile court noted in its opinion, the Department of Youth Services cannot retain custody of a delinquent child beyond age twenty-one. R.C. 2151.355(A). A juvenile who has demonstrated the ability to commit a major felony may require more time for rehabilitation than one whose offenses are less serious. Because of a juvenile's age, there may not be sufficient time remaining for rehabilitation to take place before the twenty-first birthday, even though the juvenile is otherwise amenable to rehabilitation. This factor falls within the requirement of Rule 30(E) that the age of the juvenile be considered.

"Further, the nature of the alleged act is usually relevant to the child's mental health, a factor which the court must also consider under Rule 30(E)(1). Generally, the greater the culpability of the offense, the less amenable will the juvenile be to rehabilitation. In making the bindover decision, it would not be logical, or consistent with Rule 30(E), to consider the juvenile's past record but ignore the act which has brought the juvenile to court. Accordingly, we hold that in deciding whether to relinquish jurisdiction over a child, a juvenile court may consider the seriousness of the alleged offense when determining, pursuant to Juv. R. 30(C)(1), if the juvenile is "not amenable to care or rehabilitation" in the juvenile justice system."

The court noted from the bench at the conclusion of the amenability hearing that "in considering the safety of the community, he had to consider the serious nature of the crime." The court concluded that the safety of the community required that the appellant be placed under legal restraint for a period extending beyond his majority. (Tr. 87). The appellant has failed to demonstrate that the juvenile court abused its discretion in relinquishing the court's jurisdiction over the appellant to the common pleas court. The first assignment of error is overruled.

In appellant's second assignment he contends the trial court abused its discretion in refusing to grant appellant's request for the appointment of a child psychologist to evaluate the issue of whether the appellant was amenable to rehabilitation in a juvenile court facility. Appellant contends the trial court's refusal denied him due process of law and the effective assistance of counsel.

In *Ake* v. *Oklahoma* (1985), 470 U.S. 68, the United States Supreme Court held that when the State at a capital sentencing proceeding presents psychiatric evidence of the defendant's future dangerousness, the defendant, without a psychologist's assistance, cannot offer an expert's opposing view, in such circumstances, where the consequence of error is so great, the relevance of responsive psychiatric testimony so evident, and the State's burden so slim, due process requires access to a psychiatric examination on relevant issues, to a psychiatrist's testimony, and to assistance and preparation at the sentencing phase.

In *State ex rel A. Juvenile* v. *The Honorable Richard Hoose*, Lake App. 12-196, unreported, the Lake County Court of Appeals held that a juvenile is not constitutionally entitled to the appointment of a private psychiatrist for his assistance in the amenability hearing where the court will not determine the juvenile's ultimate guilt or innocence or impose the ultimate sentence.

In *State* v. *R.G.D.* (N.J. 1987), 527 A. 2d 834, the Supreme court of New Jersey held that the juvenile did not have a constitutional right to appointment of a psychiatric expert at a waiver hearing, to determine the probability of rehabilitation, in that guilt or innocence was not at stake and the focus of the waiver proceeding was to determine the appropriate court to hear the case.

We find the reasoning in *State* v. *R.G.D., supra,* to be persuasive. We also find the court did not abuse its discretion in refusing to appoint an additional psychologist to examine the appellant for purposes of the amenability hearing. The second assignment of error is overruled.

In his last assignment of error, appellant contends he was denied the effective assistance of counsel when his counsel failed to file a motion to suppress the statement given by the appellant to police officers after his arrest on February 9, 1988.

Appellant contends his counsel was ineffective in failing to challenge the admissibility any statements given by him to the police since he was fifteen years of age at the time he gave the statement and his mother could not read.

Detective William Fricker of the Dayton Police Department testified he read the appellant and his mother a pre-interview form which contained the warnings and waiver mandated by *Miranda* v. *Arizona* (1966), 384 U.S. 436. Fricker stated that after he obtained the appellant's mother's permission to interview her son, appellant signed the pre-interview form agreeing to be interviewed by the police. This apparently occurred at 4:53 A.M. on February 9th. Fricker stated he did not interview the appellant. (Tr. 218). Detective Wade Lawson stated he interviewed the appellant beginning at approximately 7:46 A.M. on the same morning. (Tr. 222).

In *Strickland* v. *Washington* (1984), 466 U.S. 668, the United States Supreme Court held the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. The Supreme Court held that a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance. The defendant must show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability is a probability sufficient to undermine confidence in the outcome of the trial. 104 S. Ct. at 2055, 2056.

Appellant has failed to demonstrate that had counsel filed a timely motion to suppress his statement to the police, he would prevail on such motion. Assuming arguendo, a motion to suppress would have been successful, appellant has failed to demonstrate to us that an acquittal was reasonably probable but for the admission of the defendant's statements to Officer Lawson. The appellant's third assignment is likewise overruled.

R.C. 2151.26(D) provides that "no child... shall be prosecuted as an adult ...unless the child has been transferred as provided in this section." Failure to comply with the provisions of R.C. 2151.26, therefore, deprives the common pleas of jurisdiction over a juvenile defendant. *State* v. *Riggins* (1980), 68 Ohio App. 2d 1.

At oral argument it was noted by this court that although the record contains the psychological examination report of Dr. James Owens, the record fails to demonstrate evidence that a physical examination of the appellant was conducted. The State has moved this court to supplement the record with the physical examination of appellant which was conducted by a Dr. Laurence Koehler. The date of the physical examination is not clear from an examination of the report.

We are required to indulge in the presumption of the regularity of the proceedings before the trial court. Appellant does not contend he was not given a physical examination or that the trial court did not consider the results of such an examination.

In the order of transfer, the juvenile court made the following finding:

"The Court further finds *after an investigation, including an examination by Dr. James Owens*, Director of Psychological Services of this court...."

We do not consider from the wording of the transfer order that the court did not consider a physical examination of the appellant before ordering the appellant transferred to the common pleas court.

For the foregoing reasons, the judgment of the Common Pleas Court will be affirmed.

*Judgment affirmed.*

WOLFF, P.J., concurring.

I concur in the opinion of the majority. I write separately simply to make clear that the majority does not consider Dr. Koehler's examination to be the physical examination contemplated by R.C. 2151.26(A)(1)(c) and Juv. R. 30(B), and has not relied on Dr. Koehler's examination in determining that the juvenile court complied with the statute and rule. The majority has not violated the rule of *State* v. *Ishmail* (1978), 54 Ohio St. 2d 402. In determining that there was compliance with the statute and rule requiring a physical examination following the finding of probable cause, we have relied upon the presumption of the regularity of the juvenile court's proceedings. In the judgment of the majority, this presumption is not rebutted by the record.

GRADY, J., dissenting.

I must dissent from the opinion of the majority concerning the decision and order of the Juvenile Court transferring the Appellant of the jurisdiction of the Court of Common Pleas.

The Juvenile Courts have exclusive jurisdiction over minors and offenses they may commit. R.C. 2151.26(E) provides that no juvenile may be transferred for adjudication to the Court of Common Pleas unless the provisions of R.C. 2151.26 have been complied with. Absent that compliance, the Court of Common Pleas has no jurisdiction over the juvenile or his alleged offense.

R.C. 2151.26(A) and Juv. R. 30 set forth the procedure required of the juvenile courts for relinquishment of jurisdiction. *State* v. *Douglas* (1985), 20 Ohio St. 3d 34. *State* v. *Adams* (1982), 69 Ohio St. 3d 120. Read together, the statute and the rule represent the due process of law adopted by Ohio in response to the requirements of *Kent* v. *United States* (1966), 383 U.S. 541. As constitutional measures, and because they are enactments of the General Assembly and the Supreme Court undertaken in furtherance of Ohio's policy concerning juvenile offenders, they must be strictly complied with by the Juvenile Courts.

R.C. 2151.26(A) and Juv. R. 30 require the juvenile court, after a finding of probable cause, to make a "full investigation" to determine whether the child is amenable to care or rehabilitation in any facility designed for that purpose. As a part of that investigation the court must have performed a "physical and mental examination" of the child by a public or private agency or a person qualified to do so. Juv. R. 2(18) requires

that a "physical examination" be performed by a *physician*.

The Juvenile Court failed to conduct or have conducted the physical examination of Appellant required by the statute and the rule.

The court ordered on March 14, 1988, that "a physical and psychological examination by made by Dr. James Owens of Psychological Services". Dr. Owens testified that he is the Juvenile Court's chief psychologist (Tr. 4). He is not a physician. (Tr. 29). He conducted no physical examination of the Appellant, is not competent to do so, and believed in this case that an exam "doesn't matter". (Tr. 29). The record of the hearing before the Juvenile Court contains no other evidence concerning a physical examination.

At oral argument before this Court the State moved to supplement the record with a report of a physical examination of Appellant. Leave was given, and on February 5, 1990, the State filed an affidavit of a nurse at the Montgomery County Juvenile Detention Center, attaching a copy of a report of a physical examination of Appellant performed by Dr. Lawrence Koehler, M.D. The record, dated February 9, 1988, appears to be a record of a standard "intake physical" performed on any new inmate. It is wholly insufficient to meet the requirements of R.C. 2151.26(A) and Juv. R. 30 and due process of law. It was performed *prior* to the probable cause determination of March 14, 1988 and with no reference to amenability considerations. Most importantly, it was not a part of the record before the Juvenile Court and Appellant had no opportunity to rebut its findings or implications, whatever they may be. This court may not add matter to the record which was not a part of the trial court's proceedings and then decide the appeal on the basis of the new matter. *State* v. *Ishmail* (1978), 54 Ohio St. 2d 402. To do so here would only compound the due process problem.

The Juvenile Court has broad discretion in making its determination concerning the juvenile's amenability to rehabilitation. However, the court must observe and follow the procedure required of it and may not omit any part of the "full investigation" mandated by law. Contrary to the opinion of the Court's psychologist, a physical examination may reveal relevant information concerning the juvenile. It may reveal whether his misconduct had a neurological or chemical basis, factors which may directly bear on the "care and rehabilitation" of concern to the drafters of the statute and rule. No such inquiry was made here, and the Juvenile Court's determination concerning amenability and its order of transfer are defective for that reason.

Appellant alleges that the Juvenile Court "abused its discretion" in finding against amenability to rehabilitation. The error I have discussed is not, in a strict sense, an abuse of the court's discretion; the court had no discretion to omit a physical examination. However, Courts of Appeals are not precluded from considering error not assigned or specified. Although App. R. 12(A) provides that the Court of Appeals may disregard errors not assigned, this court has the power to consider errors in the record not raised by assignments of error and determine such issues in the interest of justice. *Toledo's Great Eastern Shoppers' City, Inc.* v. *Abde's Black Angus Steak House No. III, Inc.* (1986), 24 Ohio St. 3d 198.

"[T]he function of appellate tribunals includes law announcing and judicial administration. Deciding a case wrongly because counsel did not raise relevant issues or produce relevant data does not prejudice a party to the case alone. Many other persons and the law of the future may be prejudiced if a court fails *sua sponte* to notice a relevant factor of decision and therefore produces a faulty precedent." *Tate, Sua Sponte Consideration On Appeal*, 9 Trial Judges Journal 68 (1970).

The failure to conduct a physical examination of the juvenile is a failure of the procedure required of the trial court and not a failure of the litigants. Administration of justice and the proper course of subsequent, similar cases makes it appropriate that this court consider the matter though it has not been assigned as error.

Failure to follow the statutory procedure raises questions of jurisdiction, for the Common Pleas Court cannot properly acquire jurisdiction unless it is properly first relinquished by the Juvenile Court. Appellate Courts have consistently held the jurisdictional issues may be considered *sua sponte*.

Finally, the special concern of the law for juveniles does not end at the trial court. Appellate Courts also bear a responsibility to see that the fundamental policy of the state affording a juvenile the special consideration of the law is not foreclosed by rigid application of the rules of appellate review.

I believe that the foregoing matters, to the extent that they are considered *sua sponte*, raise serious issues which should be addressed by the parties. For that reason, I would order the parties to file additional briefs and authority addressing

the issue of the trial court's failure to conduct a physical examination of the child.