OPINION
{¶ 1} Thomas Taylor appeals from his conviction for aggravated robbery in the Montgomery County Court of Common Pleas.
 {¶ 2} The state's evidence revealed the following facts:
 {¶ 3} On July 1, 2004, Richard Watkins was at the apartment of his girlfriend, Latonya Shultz, with his uncle, David Watkins. At approximately 9:30 p.m., Richard and David left Latonya's apartment to visit a friend, Dwight Mitchell, who lived in an apartment at 3017 Main Street in Dayton, Ohio. Richard drove them in his car. When they arrived at Dwight's apartment building, Richard parked in the parking lot and honked the horn. When Dwight did not come to the window, Richard exited his car, went into the building, and rang the buzzer at the security door inside the building. David remained in the car. When no one responded to the buzzer, Richard left the building.
 {¶ 4} Upon leaving the building, Richard was approached by Taylor from the alley along the right side of the building. Taylor demanded money. Four other individuals came out of the alley, one of whom hit Richard in the head with a bottle. Richard started to fight with the individuals. During the fracas, Richard was kicked in the legs, arms, face, head and neck. Taylor then "c[a]me out with a gun." Richard ran down the alley, falling down several times. Taylor fired two or three shots at him, but Richard was not hit by any of the bullets. After Richard fell again, Taylor stood over him, pointed the gun at his chest, and threatened to kill him if he ran again. Taylor and other assailants took Richard's wallet containing $400 in cash and approximately $4,000 of jewelry and then walked off. Richard got up, ran back to his car, and told his uncle that he had just been robbed. Richard and David drove back to Latonya's apartment.
 {¶ 5} At the apartment, Latonya gave Richard ice and tried to bandage the various cuts and scrapes that he had suffered during the robbery. Richard testified that he had big gashes and that his jaw was cut open. He stated that he "was just pretty much bleeding from my hands to my knees, my head." Latonya wanted Richard to go to the hospital, but Richard did not. Richard also did not immediately call the police to report the incident, because he initially wanted to resolve the matter himself.
 {¶ 6} On July 3, Richard called the police from his place of employment. An officer came to his job and spoke with him. On July 6, 2004, Richard went to the Dayton police station and met with Detective Alan Miller. At that time, Richard reviewed a number of photographs and identified Taylor as one of the assailants. Richard also prepared a written statement.
 {¶ 7} Richard testified that he had met Taylor approximately one month before the incident when Taylor was with a female acquaintance of Richard. Richard indicated that Taylor had given him his cell phone number and had called himself "Moon." On August 24, 2004, Richard again selected Taylor's photograph from a photo array at the police station.
 {¶ 8} On March 11, 2005, Taylor was indicted for aggravated robbery with a firearm specification. The matter was tried to a jury on May 23 and 24, 2005. The jury found Taylor guilty of aggravated robbery but acquitted him of the firearm specification. The court sentenced Taylor to five years of imprisonment.
 {¶ 9} Taylor raises two assignments of error on appeal.
 {¶ 10} "I. APPELLANT WAS DENIED DUE PROCESS, AS THE INCONSISTENT VERDICTS WERE AGAINST THE SUFFICIENT AND/OR MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 11} In his first assignment of error, Taylor claims that his conviction was based on insufficient evidence and against the manifest weight of the evidence. In support of his assertion, he notes that "essentially this case boils down to the credibility of the complaining witness and his testimony was too inconsistent to be deemed reliable." Taylor also emphasizes that the jury acquitted him of the firearm specification.
 {¶ 12} As an initial matter, the fact that the jury acquitted Taylor of the firearm specification does not render the conviction for aggravated robbery improper. As we recently stated in State v. Gardner, Montgomery App. No. 21027, 2006-Ohio-1130:
 {¶ 13} "This court, as well as other Ohio courts, have consistently held that a finding of guilty on a principal charge but not guilty on a specification attached to the charge does not render the verdict inconsistent and thus invalidate the guilty verdict on the principal charge, at least where legally sufficient evidence supports the guilty verdict on the principal charge. State v. Wilson (January 21, 1992), Clark App. No. 2803; State v. Talley (1993), Montgomery App. No. 136839;State v. Boyd (1996), 110 Ohio App.3d 13; State v. Woodson
(1985), 24 Ohio App.3d 143.
 {¶ 14} "Inconsistency in a verdict does not arise out of inconsistent responses to different counts, but rather inconsistent responses to the same count. State v. Adams
(1978), 53 Ohio St.2d 223; State v. Lovejoy, 79 Ohio St.3d 440,1997-Ohio-371. A conviction for violating R.C. 2911.01(A)(1) does not require, and is not dependent on, any specification. The principal charge and the specification are not interdependent. Specifications are considered after and in addition to the finding of guilt on the principal charge. Accordingly, any determination as to the specification cannot change the finding of guilt on the principal charge. See State v. Perryman (1976),49 Ohio St.2d 14." Id. at ¶ 32-33.
 {¶ 15} We therefore turn to whether Taylor's conviction for aggravated robbery was based on legally sufficient evidence and was not against the manifest weight of the evidence.
 {¶ 16} "`[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins,78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541, citing Black's Law Dictionary (6th Ed. 1990) 1433. When reviewing the sufficiency of evidence, the relevant inquiry is whether any rational finder of fact, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Dennis,79 Ohio St.3d 421, 430, 1997-Ohio-372, 683 N.E.2d 1096, citingJackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d. 560. A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." Id.
 {¶ 17} In contrast, when a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins, 78 Ohio St.3d at 387, citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. "Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion." Id. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Martin, 20 Ohio App.3d at 175.
 {¶ 18} We have no difficulty concluding that the state presented sufficient evidence to support its charge of aggravated robbery and that the jury did not lose its way in crediting the state's evidence. Richard Watkins testified that Taylor and others approached him outside of an apartment located in Montgomery County. Richard stated that they forcibly took jewelry and cash totaling approximately $4,400 in value. Moreover, Richard testified that Taylor took out a gun, fired three shots at him while he attempted to escape, and later pointed the gun at him while his wallet and jewelry were taken. David testified that he had heard two shots and that Richard had run to his vehicle — bleeding, "shook up and mad" — approximately five minutes later. Latonya further testified that when Richard and David had returned to her apartment, Richard was bleeding and upset. Richard testified that he recognized Taylor and could identify him, albeit by an alias. Detective Miller testified that Richard had twice identified Taylor from photographs. Miller further indicated that Taylor's photograph was selected from individuals who used the alias of Moon. There is no question that the state presented sufficient evidence to support a conviction for aggravated robbery.
 {¶ 19} Taylor argues that Richard's version of events changed over time, particularly his statement that Taylor had fired a gun at him. Taylor also points out that David's, Richard's, and Latonya's testimonies differ as to when Richard and David were at Latonya's residence prior to going to Dwight's apartment. Upon review of the record, we find no inconsistency in Richard's statements that a gun was fired. Although Richard's July 6, 2004, statement was not artfully written, his statement that "(Moon) start to shot at me" is easily read to support his subsequent statements that Taylor had fired a gun at him. Moreover, although there were minor discrepancies in Richard's, David's, and Latonya's testimonies, their testimonies were generally consistent concerning the events at the time of the robbery and afterward in Latonya's apartment. The jury was free to credit Richard's testimony regarding the events outside of Dwight's apartment. Taylor's conviction was not against the weight of the evidence.
 {¶ 20} The first assignment of error is overruled.
 {¶ 21} "II. APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 22} In order to demonstrate ineffective assistance of counsel, Taylor must establish that his counsel's representation fell below an objective standard of reasonableness and that he has been prejudiced by his counsel's deficient performance.Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373. "Reversal of a conviction for ineffective assistance of counsel `requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment.'" State v. Hand,107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d. 151, ¶ 199. Moreover, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."Strickland, 466 U.S at 694; Bradley, 42 Ohio St.3d at 142.
 {¶ 23} Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. See Strickland, 466 U.S. at 689. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. Id.; State v.Parker, Montgomery App. No. 19486, 2003-Ohio-4326, ¶ 13.
 {¶ 24} Taylor claims that his counsel was ineffective in several respects.
1. Failure to investigate and prepare for trial
 {¶ 25} Taylor claims that his counsel failed to pursue a legitimate defense and to prepare adequately for trial. In particular, Taylor complains that his attorney did not request discovery until mid-April 2005 and did not investigate the existence of the gun or speak to potential witnesses.
 {¶ 26} According to the record, Taylor entered a plea of not guilty on March 29, 2005. The following day, Taylor's counsel filed a Crim.R. 16 discovery request and acknowledged receipt of the prosecutor's information packet. Additional discovery requests were filed on April 14 and May 11, 2005. There is no indication in the record that Taylor's attorney's discovery was dilatory.
 {¶ 27} Taylor further faults his attorney's alleged failure to investigate the existence of the gun and to interview residents of the neighboring homes or store owners in the area. As noted by the state, none of these allegations are reflected in the record. We find no evidence that Taylor's counsel acted unreasonably or that his alleged deficient conduct prejudiced Taylor.
2. Failure to question witnesses properly
 {¶ 28} Next, Taylor complains that his defense counsel did not adequately challenge Richard's testimony that shots had been fired and did not rehabilitate his own witness after the state's cross-examination.
 {¶ 29} During Richard's direct examination, he testified that Taylor had a gun and had fired three shots at him. Richard further testified that he had reported to Detective Miller on July 6, 2004, that Taylor had shot at him. During cross-examination, defense counsel stated to Richard that he had not mentioned that a gun had been fired at him during the July 6 interview. Richard responded that he had, in fact, mentioned being shot at to the detective on July 6. During redirect examination, the state asked Richard to "read the [July 6] report for us." Taylor's counsel successfully objected to this request. The state then asked Richard to read the report to himself. After doing so, the state asked Richard if he had indicated that he had been shot at. Taylor responded in the affirmative.
 {¶ 30} Taylor asserts that his counsel was ineffective by objecting to the state's attempt to have the report read and by failing to draw attention to the July 6 police report. We find defense counsel's objection to the reading of the report to be reasonable. The state asked Richard to read the report in its entirety, which would have reenforced much of Richard's testimony. Moreover, the report states that "(Moon) start to shot at me." In our view, the report supports rather than contradicts Richard's testimony that Taylor shot at him during the robbery, so that Taylor's cause was advanced by his counsel's preventing Richard from reading his July 6 statement to the jury.
 {¶ 31} Taylor also contends that his attorney failed to pursue the inconsistency in Richard's story during his cross-examination of Detective Miller. Taylor claims that Miller testified that Richard did not mention being fired at until August 24, 2004. After reviewing his report of his July 6 interview with Richard, Miller testified that the report did not mention Richard saying that the assailant had shot at him three times. Miller further testified that Richard's July 6 statement did not say that he was shot at three times, although it did say that the assailant started to shoot at him. Thus, defense counsel appears to have raised the inconsistency to the extent that one existed.
 {¶ 32} Taylor's sole witness during his case-in-chief was Sergeant Carlene Maynes of the Dayton police department, whose duties included keeping the dispatch records. Maynes testified there were no reports of gunfire in the area of North Main Street and Siebenthaler between 8:30 p.m. and 12:30 a.m. on July 1, 2004. On cross-examination, Maynes testified that a report of fireworks was received at 9:56 p.m. on that night from 240 East Siebenthaler, which was approximately three blocks away from Dwight's apartment building. She further stated that it is not uncommon to mistake the sound of gunfire for fireworks and vice versa.
 {¶ 33} Taylor argues that his counsel should have used re-direct examination to emphasize that it was the Fourth of July weekend and, therefore, it was more likely that the report of fireworks was, in fact, fireworks. Taylor's counsel took a different approach. In his re-direct examination, Taylor's counsel elicited testimony that 240 East Siebenthaler was not visible on the aerial photograph of the location of the robbery. The apparent intent of this line of questioning was to demonstrate that the fireworks report was not near the robbery site and, thus, the report of fireworks — regardless of whether it was fireworks or gunfire — was unrelated to the robbery. Although it is debatable whether Taylor's approach would have been more effective, we will not second-guess counsel's reasonable trial strategy. Moreover, as noted by the state, the jury had previously been informed that the events occurred on July 1, 2004, which was a Thursday and shortly before the holiday weekend. Thus, the jury was in a position to evaluate whether the fireworks report was more likely fireworks due to the Fourth of July or gunfire.
3. Failure to request jury instruction on lesser includedoffense of robbery
 {¶ 34} Taylor argues that his counsel failed to request jury instructions on the lesser included offense of robbery. Robbery, as defined in R.C. 2911.02(A)(1), is a lesser included offense of aggravated robbery as defined in R.C. 2911.01(A)(1). State v.Woods, Montgomery App. No. 19005, 2002-Ohio-2355. "The difference between the two crimes is that aggravated robbery also requires that the offender `either display the weapon, brandish it, indicate that the offender possesses it, or use it.' R.C. 2911.01(A)(1)." State v. Winfield (Sept. 18, 2000), Ross App. No. 98CA2453; see State v. Gooden, Montgomery App. No. 19231, 2003-Ohio-905, ¶ 42.
 {¶ 35} The Supreme Court of Ohio has stated that if the evidence presented at trial reasonably supports both an acquittal on the charged crime and a conviction on a lesser included offense then an instruction on the lesser included offense is required. State v. Thomas (1988), 40 Ohio St.3d 213,533 N.E.2d 286; Gooden at ¶ 40, citing State v. Kilby (1977),50 Ohio St.2d 21, 24-25, 361 N.E.2d 1336. However, if the jury could not reasonably find against the state on any element of the charged crime, then an instruction on a lesser included offense is improper. Gooden at ¶ 40. Moreover, a trier of fact will not be allowed to consider a lesser included offense when the evidence adduced on behalf of the defense is such that, if accepted by the trier of fact, the evidence would constitute a complete defense to all substantive elements of the crime charged. Id. at ¶ 39;State v. Nolton (1969), 19 Ohio St.2d 133, 249 N.E.2d 797.
 {¶ 36} Here, Taylor attempted to discredit Richard's testimony that Taylor had fired the gun. He attempted to demonstrate that Richard had not originally indicated that Taylor had fired the gun three times. He tried to demonstrate that the police department did not receive any reports of gunfire. During the cross-examination of Miller, Miller testified that Richard had described a semi-automatic weapon but that no shell casings were found at the scene. During closing argument, Taylor's counsel emphasized that the only witness who could testify that an aggravated robbery with a firearm ever took place was Richard, and he argued that Richard was not credible.
 {¶ 37} Upon review of the evidence, we find no reasonable scenario whereby the jury could have concluded that Taylor had a deadly weapon "on or about his person or under his control" but did not display, brandish, indicate his possession of, or use it. The only evidence that Taylor had a deadly weapon — in this case, a gun — came from Richard. Even if the jury discredited Richard's testimony that Taylor had fired the gun at him, Taylor would have necessarily, at a minimum, displayed or indicated his possession of the weapon in order for Richard to have been aware of it. There was no independent evidence that Taylor had a weapon but did not display, brandish, or use it during the robbery. In addition, if the jury had concluded that Taylor did not have the gun, such a determination would have been a defense to both aggravated robbery and robbery under the facts of this case. Accordingly, the evidence presented at trial did not reasonably support both an acquittal for aggravated robbery but a conviction for robbery. Moreover, in light of the fact that Taylor's defense counsel had argued in his closing argument that Richard was not credible, it is reasonable that he would have chosen not to request a robbery instruction so as to avoid presenting the jury with a middle ground upon which to convict.
 {¶ 38} Accordingly, we conclude that Taylor's counsel did not render ineffective assistance when he failed to request a jury instruction for robbery.
4. Failures regarding the jury questions during deliberations
 {¶ 39} Taylor asserts that his counsel was ineffective by failing to ensure that he was present at every stage of the trial. He argues that he should have been present when the court addressed the jury's second question during deliberations. Taylor further asserts that his counsel should not have agreed to the answer to the second jury question.
 {¶ 40} Crim.R. 43 provides that the defendant shall be present "at the arraignment and every stage of the trial, including the impaneling of the jury, the return of the verdict, and the imposition of sentence" unless he is voluntarily absent or has engaged in disruptive conduct in the courtroom. This right is fundamental. State v. Skatzes, Montgomery App. No. 15848, 2003-Ohio-516, ¶ 366.
 {¶ 41} In this case, Taylor's counsel expressly waived Taylor's presence for the discussions of the jury's questions. Although Taylor was in the courtroom and could have attended, there is no suggestion that he was prejudiced by his counsel's conduct. The discussions were held in chambers and outside of the presence of the jury. Moreover, there is no indication that the court's answer or his attorney's assent to that answer would have been different had Taylor been present.
 {¶ 42} Taylor also complains that his attorney should not have agreed to the court's answer to the second jury question. That question stated: "Can we find `guilty' of aggravated robbery and `did not' have a firearm." In chambers, the state, Taylor's counsel, and the court all agreed that the correct answer to the question was "yes." That answer was conveyed to the jury. The jury subsequently found Taylor guilty of aggravated robbery but not guilty of the firearm specification.
 {¶ 43} As stated in our discussion of Taylor's first assignment of error, a conviction for aggravated robbery does not require, and is not dependent on, any specification. Accordingly, the court's answer of "yes" to the second jury question was the legally correct response. Because the court's answer was proper, Taylor's counsel did not act deficiently by agreeing to that answer.
5. Failure to draft proper Crim.R. 29 motion
 {¶ 44} Finally, Taylor argues that his counsel failed to draft motions properly, particularly his Crim.R. 29 motion for acquittal. That motion consisted of two sentences: "Now comes Defendant Thomas E. Taylor, through Counsel, and hereby moves the Court for a judgment of acquittal in the above-referenced matter. This Motion is made pursuant to Rule 29(C) of the Ohio Rules of Criminal Procedure." Although Taylor's counsel failed to provide any argument in support, we cannot find that Taylor was prejudiced by his attorney's conduct. As we concluded supra, the state provided legally sufficient evidence to support his conviction. Accordingly, there is no reasonable probability that the trial court would have granted Taylor's Crim.R. 29 motion had his attorney's motion been more detailed.
 {¶ 45} The second assignment of error is overruled.
 {¶ 46} The judgment of the trial court will be affirmed.
Fain, J. and Valen, J., concur.
(Hon. Anthony Valen retired from the Twelfth District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio).