The STATE of Ohio, Appellee,

v.

HOLMES, Appellant.

[Cite as *State v. Holmes,* 181 Ohio App.3d 397, 2009-Ohio-1241.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 91174.

Decided March 19, 2009.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Michael Graham, Assistant Prosecuting Attorney, for appellee.

Susan J. Moran, for appellant.

ANN DYKE, Judge.

{¶ 1} Defendant, Brittany Holmes, appeals from her conviction for aggravated robbery with a firearm specification. For the reasons set forth below, we reverse her conviction for aggravated robbery, remand for entry of judgment of conviction on the lesser included charge of robbery, and remand for resentencing on the lesser charge. We also reverse the conviction for the three-year firearm specifi-

cation and remand for resentencing on robbery with a one-year firearm specification.

{¶ 2} Defendant was indicted for one count of aggravated robbery pursuant to R.C. 2911.01(A)(1), with one-year and three-year firearm specifications in connection with an alleged attempted armed robbery at the Kentucky Fried Chicken restaurant in Cleveland Heights on September 24, 2007. Defendant's cousin, Deondrae Glover, was charged with delinquency in connection with this alleged offense but later entered into a plea agreement and agreed to testify on behalf of the state in this matter.

{¶ 3} The matter proceeded to a jury trial. The state's evidence indicated that defendant worked at the Cleveland Heights Kentucky Fried Chicken restaurant in 2005 or 2006. After this time period, Bobby Hicks was hired as manager of the restaurant, and he discontinued various practices that he considered unsafe, such as keeping the back door open and making night money deposits.

{¶ 4} In July 2007, defendant contacted Hicks and told him that she wanted to return to work as a restaurant manager. Hicks introduced defendant to corporate office officials, who decided to accept defendant into the manager-training program. Defendant was assigned to complete the training program at the Lakewood restaurant. She attended only two days of the five-week program, however, and then left a message for Hicks explaining that she had to go out of town.

{¶ 5} Deondrae Glover testified that defendant asked him whether he had a gun, and she indicated that she knew of a "sweet lick," as she believed that she could get some money at the restaurant. Glover obtained a gun from a drug dealer and notified defendant. Defendant picked up Glover, and he showed her the gun. He put the gun and bullets in a bag and placed them in the back seat of defendant's car. The two were dressed in black and had ski masks. At approximately 10:45 p.m., they parked on a street behind the restaurant. Glover waited by a low retaining wall and hid the gun in nearby bushes. Defendant waited on the opposite side of the parking lot and peered through the fence that separates the restaurant parking lot from the street. Defendant used the number-blocking feature of her cell phone to call the restaurant. She made a total of six calls and did not speak when employees answered the phone.

{¶ 6} At approximately 11:00 p.m., a resident of this area was walking her dog and became suspicious of Glover and defendant, who were dressed in black and wearing stocking caps. She contacted University Heights Police. Defendant and Glover were subsequently arrested, and .38–caliber bullets were recovered from defendant's car. A ski mask was found in the fence near where defendant was crouching. A short time later, police recovered a .38–caliber revolver from bushes near the retaining wall adjacent to the restaurant parking lot. The

arresting officer testified that as he patted defendant down, he asked her what was going on, and she stated that she and Glover were out for a walk.

{¶ 7} Glover's DNA was found on the trigger of the weapon. There was also a minor DNA contributor on the weapon, but no conclusions could be drawn about this individual. In addition, the weapon was operable.

{¶ 8} Glover made a statement to police. He stated that he and defendant were waiting to rob an employee leaving with the night deposits. He omitted all mention of the gun in this statement.

{¶ 9} Defendant testified on her own behalf. She stated that she stopped attending the management-training program because it conflicted with her college classes and another job that she had. She also stated that she frequently wears black clothing and happened to have a ski mask in her pocket at the time of her arrest. She stated that Glover placed a bag in her car when she picked him up, but she did not know that it contained a gun. She and Glover parked behind the restaurant and were hanging out, waiting for the restaurant to close. Defendant stated that she had friends who worked at the restaurant and thought they would give her and Glover free food after the restaurant closed, but she hung up each time an unfamiliar voice answered the phone. She denied planning to rob the restaurant and stated that she was in college, that her tuition was fully paid under a grant, and that she has never been in trouble before.

{¶ 10} Defendant was convicted of the aggravated robbery and the firearm specifications. She was sentenced to three years' imprisonment on the aggravated-robbery charge and three years for the firearm specification. She now appeals and assigns four errors for our review.

{¶ 11} For her first assignment of error, defendant asserts that her convictions are not supported by sufficient evidence.

{¶ 12} Under the Due Process Clause of the Fourteenth Amendment, a defendant in a criminal case cannot be convicted except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged. *Jackson v. Virginia* (1979), 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560; *In re Winship* (1970), 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368. In analyzing claims of insufficient evidence, the court must determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson* at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560; *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. An appellate court's function, when reviewing the sufficiency of the evidence to support a criminal conviction, is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the

defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.

{¶ 13} The essential elements of aggravated robbery are defined in R.C. 2911.01, which states:

{¶ 14} "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

{¶ 15} "(1) Have a deadly weapon on or about the offender's person or under the offender's control *and either display the weapon, brandish it, indicate that the offender possesses it, or use it* ; * * *." (Emphasis added.)

{¶ 16} The essential elements of robbery are set forth in R.C. 2911.02 as follows:

{¶ 17} "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:

{¶ 18} "(1) Have a deadly weapon on or about the offender's person or under the offender's control; * * *."

{¶ 19} A criminal attempt is when one purposely does or omits to do anything that is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. R.C. 2923.02(A); *State v. Woods* (1976), 48 Ohio St.2d 127, 2 O.O.3d 289, 357 N.E.2d 1059, paragraph one of the syllabus. This standard focuses on overt acts of the defendant that convincingly demonstrate a firm purpose to commit a crime, while allowing police intervention in order to prevent the crime when the criminal intent becomes apparent. Id.

{¶ 20} Complicity is established under R.C. 2923.03 when one is "acting with the kind of culpability required for the commission of an offense," inter alia, aids or abets another in committing the offense. To aid and abet is "to assist or facilitate the commission of a crime, or to promote its accomplishment." *State v. Johnson* (2001), 93 Ohio St.3d 240, 243, 754 N.E.2d 796.

{¶ 21} Finally, we note that when the evidence is insufficient to support the greater offense, but sufficient to support a conviction on the lesser included offense, an appellate court may vacate the sentence and remand for entry of judgment of conviction and resentencing under the lesser included offense of robbery and the one-year firearm specification. *United States v. Lamartina* (C.A.6, 1978), 584 F.2d 764; *Jenkins v. Jago* (C.A.6, 1984), 746 F.2d 1477; Crim.R. 33(A)(4). See also *State v. McSwain,* Cuyahoga App. No. 83394, 2004-

Ohio-3292, 2004 WL 1402700; *State v. McCoy*, Franklin App. No. 07AP–769, 2008-Ohio-3293, 2008 WL 2588568; *State v. Brown*, Franklin App. No. 05AP–601, 2006-Ohio-2307, 2006 WL 1280895; *State v. Frazier*, Franklin App. No. 05AP–1323, 2007-Ohio-11, 2007 WL 16778.

{¶ 22} Here, robbery, in this instance, requires proof of an attempt or commission of a theft or flight immediately after the attempt or commission, with a deadly weapon on or about the offender or under the offender's control. R.C. 2911.02(A)(1). Aggravated robbery requires proof of the same elements, except the offender must also "display the weapon, brandish it, indicate that the offender possesses it, or use it." R.C. 2911.01(A). Robbery, as defined in R.C. 2911.02(A)(1), is a lesser included offense of aggravated robbery as set forth in R.C. 2911.01(A)(1). *State v. Schoonover* (Sept. 21, 1998), Adams App. No. 97 CA 647, 1998 WL 652549; *State v. Smith*, Trumbull App. No. 2005–T–0080, 2006-Ohio-4669, 2006 WL 2589802; *State v. Taylor*, Montgomery App. No. 21122, 2006-Ohio-2655, 2006 WL 1461037.

{¶ 23} In this instance, the essential elements of the lesser offense of robbery were established beyond a reasonable doubt, as the evidence demonstrated that defendant, in attempting a theft offense, had a weapon, under the law of complicity. Defendant had Glover procure a weapon, drove with him to the rear of the restaurant, and hid in wait for an employee with the nightly cash, a substantial step of robbery that was thwarted only upon police intervention. However, the offense of aggravated robbery was not established beyond a reasonable doubt, as there was no evidence that defendant, either principally or as an aider or abettor, committed the additional element needed to elevate robbery to an aggravated robbery, that is, there was no evidence that defendant did "display the weapon, brandish it, indicate that [she possessed] it, or use it."

{¶ 24} In accordance with all the foregoing, we reverse defendant's conviction for aggravated robbery, find sufficient evidence to convict her of robbery, and remand for entry of judgment of conviction for robbery and resentencing on this lesser charge.

■ {¶ 25} Likewise, in the absence of evidence that defendant did "display the weapon, brandish it, indicate that [she possessed] it, or use it," there is insufficient evidence to support the three-year firearm specification, and defendant must be resentenced only on the one-year firearm specification under R.C. 2941.141.

■ {¶ 26} Defendant next claims that her conviction is against the manifest weight of the evidence.

{¶ 27} In *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, the court illuminated its test for manifest weight of the evidence as follows:

{¶ 28} "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Black's [Law Dictionary (6th Ed.1990) ], at 1594." (Emphasis omitted.)

{¶ 29} The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 30} The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.

{¶ 31} In this matter, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice in convicting defendant of the offense. The evidence presented by the state was thorough and credible, and it consistently established that defendant familiarized herself with store procedures and formulated a plan to rob an employee. Although defendant stated that she was simply waiting for closing time to obtain free food from a former co-worker, she did not actually speak to anyone about food, and her clothing and conduct demonstrated that she was concealing herself and lying in wait for an unwary worker. The conviction for robbery with a one-year firearm specification is not against the manifest weight of the evidence.

{¶ 32} For her third assignment of error, defendant contends that the trial court erred and violated her constitutional rights in allowing the state to introduce evidence of her silence as an indication of guilt.

{¶ 33} In *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the United States Supreme Court held that an individual must be advised of his or her constitutional rights when law-enforcement officers initiate questioning after that person has been taken into custody or otherwise deprived of his or her freedom in any significant way. Any statement given under custodial police interrogation, without the *Miranda* warnings first being given, may later be excluded from use by the state in any resulting criminal prosecution. Id.

{¶ 34} Further, a defendant's postarrest silence cannot be used against him at trial. *Doyle v. Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91. Thus "[a]ny comment which [implies] that the defendant is guilty because he remained silent subverts the guarantees afforded him by the Fifth Amendment of the Constitution of the United States." *State v. Williams* (1979), 64 Ohio App.2d 271, 276, 18 O.O.3d 262, 413 N.E.2d 1212.

{¶ 35} In this matter, Officer Rogers testified that defendant was uncooperative and would not answer their questions. He explained that the failure to obtain information was the reason he decided to handcuff defendant and Glover. Moreover, the other officers testified that defendant told the police that she and Glover were out taking a walk. We therefore conclude that the isolated statement from Officer Rogers was not meant to be an insinuation of guilt based on defendant's silence. Accord, *State v. Johnson,* Cuyahoga App. No. 89504, 2008-Ohio-1716, 2008 WL 963128. The admission of this evidence is harmless error in light of the remaining evidence of defendant's conduct, clothing, and preplanning.

{¶ 36} For her fourth assignment of error, defendant contends that she was denied effective assistance of counsel.

{¶ 37} This court reviews a claim of ineffective assistance of counsel under the two-part test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Under *Strickland,* a reviewing court will not deem counsel's performance ineffective unless a defendant can show that his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph one of the syllabus. To show prejudice, a defendant must prove that but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different. Id. at paragraph two of the syllabus. Judicial scrutiny of a lawyer's performance must be highly deferential. *State v. Sallie* (1998), 81 Ohio St.3d 673, 674, 693 N.E.2d 267.

{¶ 38} In this assigned error, defendant claims that her trial counsel rendered ineffective assistance when he failed to question Glover about the significant benefit he received for having his charges heard in juvenile court and his motivation to lie. Defendant also claims that her trial counsel was ineffective for failing to object to the reference to defendant's silence.

{¶ 39} As to the first of these issues, we note that counsel did clearly convey to the jury that Glover had been in trouble at school, that his juvenile charges were dependent upon him testifying against defendant, and that he lied to the police by providing a statement that wholly failed to mention his actions with regard to the gun. We therefore reject this claim of deficient performance.

{¶ 40} As to the second issue, we have already determined that no prejudicial error occurred in connection with the brief reference to defendant's silence. A claim of ineffective assistance of counsel citing this claim is therefore not well taken. See *State v. Henderson* (1988), 39 Ohio St.3d 24, 33, 528 N.E.2d 1237.

{¶ 41} In accordance with the foregoing, defendant's conviction for aggravated robbery with a three-year firearm specification is reversed, her conviction for robbery with a one-year firearm specification is affirmed, and the matter is remanded for resentencing.

Judgment accordingly.

KILBANE and JONES, JJ., concur.