[Cite as *State v. Thaler*, 2020-Ohio-827.]

# IN THE COURT OF APPEALS OF OHIO
# SECOND APPELLATE DISTRICT
# MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case Nos. 28402 & 28403 |
| | : | |
| v. | : | Trial Court Case Nos. 2017-CR-3796 |
| | : | & 2018-CR-2522 |
| DION EARL THALER | : | |
| | : | (Criminal Appeal from |
| Defendant-Appellant | : | Common Pleas Court) |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 6th day of March, 2020.

. . . . . . . . . . .

MATHIAS H. HECK JR. by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

CHRISTOPHER C. GREEN, Atty. Reg. No. 0077072, 130 West Second Street, Suite 830, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Dion Earl Thaler appeals from his conviction following a bench trial in two consolidated cases on charges of having a weapon while under disability (with a three-year firearm specification), vandalism (with a three-year firearm specification), and felony domestic violence.

{¶ 2} Thaler advances four assignments of error. First, he contends the trial court erred in applying a three-year firearm specification to the offense of having a weapon while under disability where there was no evidence that he displayed, brandished, indicated that he possessed, or used the firearm to facilitate the offense. Second, he claims the trial court erred in applying a three-year firearm specification to his vandalism conviction for the same reason. Third, he asserts that the trial court erred in finding him guilty of having a weapon while under disability because the State presented legally insufficient evidence to prove operability of the weapon he possessed. Fourth, he challenges the trial court's imposition of a consecutive sentence.[1]

{¶ 3} The charges against Thaler involved allegations that he had assaulted his girlfriend and later, while armed with a handgun, had damaged a business she owned. The primary witness at trial was Thaler's girlfriend, A.D. She testified that she met Thaler and started dating him in May 2017. (Tr. at 38.) They immediately became romantically involved. For a short time, they met and spent nights at hotels because A.D. was not ready to bring him to her home. Within a week or so, however, Thaler brought his belongings to A.D.'s house and began spending the night there. (*Id.* at 39-41.) Within a

---

[1] Thaler filed his initial appellant's brief on August 21, 2019 under only Montgomery C.A. No. 28402. He then filed an "amended" appellate brief on December 10, 2019 under Montgomery C.A. Nos. 28402 and 28403 in recognition of the appeals being consolidated. The inclusion of both appellate case numbers is the only change in the amended brief.

few weeks, Thaler began working as a cook at a restaurant A.D. owned. He began living with her every day and riding to work with her. (*Id.* at 45.)

{¶ 4} Toward the end of July, the couple's relationship became "very strained." (*Id.*) Thaler began spending some time at an elderly lady's house a block away from A.D., but he still was working at the restaurant. (*Id.* at 59.) On August 10, 2017, Thaler called A.D. and asked her to pick him up because he had been in a bar fight. (*Id.* at 60-61.) A.D. agreed and took him to his mother's house. When Thaler's mother refused to let him stay, A.D. took him with her to another bar, the Whisky Barn. She went inside to pay an outstanding bar tab while Thaler waited in her car. (*Id.* at 62.) Thaler eventually came inside the bar and began cursing at A.D. and telling her to "come out." He proceeded to take her keys, punch her in the mouth, and leave in her car. (*Id.* at 63.) A.D. got someone else to drive her home, but she could not get inside because Thaler had her keys. (*Id.*) She then learned that her car and keys were in Thaler's sister's driveway. A.D. got a ride there, retrieved her car, and went home. (*Id.* at 64.)

{¶ 5} Later that night, A.D. was asleep in bed when she awoke to find Thaler beating her. He was punching her in the face, head, and chest with a closed fist. (*Id.* at 65-66.) A.D. told Thaler that she loved him to get him to stop. He subsequently stopped the beating and told her to lay down with him. (*Id.*) The following morning, A.D. went outside and got in her car while Thaler was still in bed. She drove to the hospital emergency room. (*Id.* at 67.) Once there, A.D. lied about the identity of her attacker, claiming that she did not know the person who had broken into her house and assaulted her. She did not identify Thaler as the person who beat her because she was afraid, and he had texted her and told her not to say anything. (*Id.*) A.D. spent three days in the

hospital as a result of her injuries. (*Id.* at 71.) After her discharge, she stayed in a hotel for a while because Thaler had kicked her house door in and she did not feel safe there. (*Id.* at 73.)

{¶ 6} One week after the assault, A.D. encountered Thaler at her restaurant. She arrived to find him inside. He was drunk, belligerent, and "talking crazy." (*Id.* at 74-75.) She exited and told Thaler from the doorway that he needed to leave. She then sat in her vehicle and watched him walking back and forth to her office. He eventually left out the back door, and A.D. locked up and left. (*Id.* at 75.) Thaler appeared at A.D.'s house later that night, and a brief altercation occurred involving him slamming her arm in a door before leaving. (*Id.* at 78-79). The following morning, A.D. went to work and discovered that her office computer and the restaurant's two restrooms had been vandalized. (*Id.* at 79-83.) She reviewed video from multiple surveillance cameras showing that Thaler had caused the damage to the computer. The video also showed him going in and out of the restrooms. Finally, the video showed Thaler carrying a handgun that A.D. recognized as one she had kept in the restaurant. A.D. testified that it was the same gun she had seen Thaler fire in the air on the Fourth of July. (*Id.* at 90.) She testified that the video showed Thaler in the restaurant when she had been talking to him from the doorway and when she was watching him from her car. (*Id.* at 91.) The surveillance video was played at trial. (State's Exhibit 6.)

{¶ 7} Following an incident with Thaler at a gas station on August 24, 2017, A.D. contacted the police and identified him as the person who had assaulted her in her home. (*Id.* at 97-99.) Sometime after Thaler's arrest in September 2017, A.D. felt safe enough to go to the police department and give a full account of the assault and the subsequent

vandalism. (*Id.* at 99-100.)

{¶ 8} The only other witness at trial was Ereika Howard, who served as Thaler's parole officer at the time of the events at issue. Howard testified that Thaler got out of prison in February 2017 after serving time for attempted aggravated burglary and that she became his parole officer in May or June 2017. (*Id.* at 138-139.) On cross examination, Howard testified about seeing a picture of Thaler with a gun on his cell phone. (*Id.* at 140.) She saw the picture on or around July 24, 2017, and she subsequently imposed a requirement "that he should have no toy guns, ammo, BB guns, et cetera and to delete all play gun pictures[.]" (*Id.* at 147-148.) On redirect examination, Howard testified that she did not talk to A.D. about the gun in the picture. Howard also testified that she did not know whether the gun in the picture actually was a toy gun. (*Id.* at 149.)

{¶ 9} Based on the evidence presented, the trial court found Thaler guilty of third-degree-felony domestic violence in Montgomery C.P. No. 2017-CR-3796. It found him guilty of having a weapon while under disability, a third-degree felony, and vandalism (business property of $1,000 or more), a fifth-degree felony, both with three-year firearm specifications, in Montgomery C.P. No. 2018-CR-2522.[2]

{¶ 10} At sentencing, the trial court merged the firearm specifications in the weapon-under-disability and vandalism case and imposed a single three-year prison term. It imposed concurrent 12-month prison sentences for having a weapon while under disability and vandalism. The trial court ordered the three-year sentence on the firearm specification and the 12-month term on the underlying offenses to be served

---

[2] The trial court found Thaler not guilty of a second charge of vandalism (damage to business regardless of value).

consecutively. The result was an aggregate four-year sentence in that case. The trial court also awarded A.D. restitution of $1,600. In the domestic-violence case, the trial court imposed a three-year prison term, which it ordered to be served consecutive to the aggregate four-year sentence in the other case.

{¶ 11} In his first two assignments of error, Thaler challenges the trial court's determination that the three-year firearm specifications accompanying the weapon-under-disability and vandalism charges had been proven. Even if he had a firearm in his possession or control, he challenges the legal sufficiency of the evidence to establish that he displayed the firearm, brandished it, indicated that he possessed it, or used it to facilitate either offense, as required by R.C. 2941.145(A).

{¶ 12} When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist. 2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 13} With the foregoing standards in mind, we find Thaler's argument to be persuasive. The firearm specifications accompanying the weapon-under-disability and vandalism charges involved him having a handgun with him when he damaged A.D.'s

restaurant. Surveillance video from inside the restaurant shows the gun lying on an office desk next to A.D.'s computer when Thaler smashed the computer. He later picked up the gun and took it with him as he moved into the main part of the restaurant. A.D. testified that Thaler previously had taken the gun from the restaurant and that he carried it "all the time." (Tr. at 50-52.) Therefore, as the State argues, it is reasonable to infer that Thaler brought the weapon into the restaurant, placed it on the desk, picked it up, and took it with him when he left. (The gun was not found at the scene and never was recovered).

{¶ 14} A three-year firearm specification requires proof "that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." R.C. 2941.145(A); *see also* R.C. 2929.14(B)(1)(a)(ii). Here the video supports a finding that Thaler had a firearm on his person or under his control inside the restaurant. The issue raised by his assignment of error is whether he also did one of the other things the statute requires.

{¶ 15} We conclude that Thaler did not "brandish" the gun. The word "brandish" in the statute means " 'to waive or flourish (something, especially a weapon) as a threat or in anger or excitement.' " *State v. Myrick*, 2d Dist. Montgomery No. 23843, 2011-Ohio-244, ¶ 85, quoting *Oxford English Dictionary Online*, http://oxforddictionaries.com. When the incident occurred, A.D. initially was near the front door of the restaurant. (Tr. at 75, 91, 125.) She then went to her car and waited for Thaler to leave. A.D. never saw the gun at the scene. (*Id.* at 75.) And the video does not depict Thaler waiving it around in the empty restaurant. Based on these facts, we conclude that he did not brandish the weapon. He also did not indicate to anyone that he possessed the gun at the time of his offenses.

Nor did he "use" the gun "to facilitate" the offenses, which means to make them easier to commit. *Id.*

{¶ 16} On appeal, the State maintains that Thaler "displayed" the handgun inside the restaurant while committing his offenses. The State reasons that he did so by apparently placing the weapon on the desk when damaging the computer.[3] This argument ascribes a meaning to the word "display" that is contrary to the intent of the statute. In *Myrick,* this court recognized that the additional three-year prison term imposed for displaying, brandishing, indicating possession of, or using a firearm is intended to punish conduct that increases the risk of harm or other consequences associated with a criminal offense. *Id.* at ¶ 84-85.

{¶ 17} This court defined "display" in *Myrick* for purposes of the firearm specification to mean to "make a prominent exhibition of (something) in a place where it can be easily seen: [i.e.,] *the palace used to display a series of Flemish tapestries.*" (Emphasis sic.) *Id* at ¶ 85. This court then held that the defendant did not "display" a handgun, within the meaning of the firearm-specification statute, when he tossed it over a fence as a police officer approached. This was so because the act of tossing the weapon over the fence was not a type of "risk-increasing" conduct involving the weapon.

{¶ 18} We reach the same conclusion here. We are unpersuaded that Thaler "displayed" the handgun, within the meaning of the statute, when he placed it on a table in the restaurant's unoccupied office. Thaler was alone in the empty restaurant at the

---

[3] The portion of the surveillance video we have does not actually show Thaler placing the gun on the desktop next to the computer. After he smashes the computer, however, he does return to the office and retrieve the gun, which he carries into another part of the restaurant. And A.D. testified that Thaler previously had taken the gun from the restaurant and that he carried it all the time.

time. (Tr. at 75, 91, 125.) The weapon could not easily have been seen by anyone at that time because no one was there. Moreover, the act of placing the weapon on the table, and subsequently picking it back up, did not constitute a "prominent exhibition" of the weapon in the empty building. Finally, Thaler's act of placing the gun on the table did not increase the risk of harm to anyone or make any other undesirable consequences more likely. For these reasons, we hold that Thaler did not "display" the handgun, as required for a three-year firearm specification conviction.

{¶ 19} We note, however, that R.C. 2941.141(A) creates a one-year firearm specification requiring only proof "that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense." The difference between this specification and the three-year specification is that the one-year variety does not require proof that the offender displayed, brandished, indicated possession of, or used the firearm. In *Myrick*, we reversed and remanded for the trial court to sentence the defendant on the one-year specification after finding that his act of tossing a gun over a fence did not constitute displaying, brandishing, indicating possession of, or using the weapon. *Myrick* at ¶ 86. This is the proper disposition in Thaler's case.

{¶ 20} In finding the three-year firearm specifications proven, the trial court determined that Thaler (1) had a firearm on or about his person or under his control while committing his offenses *and* (2) that he displayed, brandished, indicated possession of, or used the weapon. We have found legally insufficient evidence to prove the second part. The surveillance video establishes beyond a reasonable doubt, however, that Thaler did have a firearm on or about his person or under his control inside the restaurant. Therefore, we see no error in the trial court's first determination, which supports a

conviction on the lesser, one-year firearm specification under R.C. 2941.141(A).[4] *Myrick* at ¶ 86; *see also State v. Holmes*, 181 Ohio App.3d 397, 2009-Ohio-1241, 909 N.E.2d 163, ¶ 25 (8th Dist.) ("[I]n the absence of evidence that defendant did 'display the weapon, brandish it, indicate that [she possessed] it, or use it,' there is insufficient evidence to support the three-year firearm specification, and defendant must be resentenced only on the one-year firearm specification under R.C. 2941.141."). The first two assignments of error are sustained.

{¶ 21} In his third assignment of error, Thaler challenges the legal sufficiency of the evidence to support his conviction for having a weapon while under disability. Specifically, he contends the State presented legally insufficient evidence to prove that the handgun at issue was operable or readily could have been made operable at the time of the offense.

{¶ 22} To obtain a conviction for having a weapon while under disability, the State must prove beyond a reasonable doubt that the defendant knowingly acquired, carried, or used a firearm. *State v. Priest*, 2d Dist. Montgomery No. 24225, 2011-Ohio-4694, ¶ 41. Here the surveillance video establishes that Thaler carried the handgun around inside the restaurant. His "operability" argument goes to whether the handgun qualified as a

---

[4] To impose a one-year mandatory prison term on an offender for a firearm specification, the indictment must specify "that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense." R.C. 2941.141(A). Here the indictment included this language, while including additional language that Thaler "displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense," as required for the three-year specification in R.C. 2941.145(A). Because the indictment included the language required for a one-year firearm specification, the trial court made the finding required for a one-year specification, and the evidence supports that finding, we see no reason why we cannot remand for sentencing on a one-year firearm specification, which is analogous to a "lesser included" offense.

"firearm." Under R.C. 2923.11(B)(1), a "firearm" includes a gun that is operable or that readily can be made operable. "Thus, under R.C. 2923.11, for an individual to be found guilty of a firearm disability charge or firearm specification, the state must prove beyond a reasonable doubt that the firearm was operable or could readily have been rendered operable at the time of the offense." *Id.* at ¶ 51. Operability may be inferred from all of the relevant facts and circumstances. *Id.* at ¶ 52-53; *see also* R.C. 2923.11(B)(2) ("When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm.").

{¶ 23} Here the record contains ample evidence to support a finding that the gun Thaler had in the restaurant was operable. A.D. testified that she had kept the gun in her restaurant "for safety." (Tr. at 50.) She stated that Thaler took the gun from the restaurant and started carrying it "[a]ll the time." (*Id.* at 51-52.) A.D. recalled Thaler firing the gun into the air during a Fourth of July celebration. (*Id.*) Thaler subsequently carried the same gun in the restaurant when he vandalized the office computer. (*Id.* at 89-90.) In our view, these facts collectively support an inference, beyond a reasonable doubt, that the gun Thaler had in the restaurant with him on August 17, 2017 was operable, making it a "firearm" for purposes of his conviction for having a weapon while under disability. The record certainly contains legally sufficient evidence to support such a finding.

{¶ 24} In opposition to our conclusion, Thaler cites testimony from A.D. about an incident that had occurred a week earlier on August 10, 2017. That was the night she picked Thaler up after a bar fight and drove him to his mother's house. The following

exchange occurred between the prosecutor and A.D. when she testified about that night at trial:

Q. Did you go pick him up?

A. I did.

Q. And where did you take him?

A. To his mom's house. And—to his mom's house. And I knew that they didn't want him there. She wouldn't let him in, I think, because his brother that he had gotten in a fight with was there. And he was angry because he wanted his gun and she gave the gun to him but had taken parts out of it or something so that he couldn't shoot.

Q. When you say "the gun," is that the gun that you testified about earlier?

A. Yes.

[DEFENSE COUNSEL]: I am going to object on the basis for her— did she say she saw—she heard—I don't know how she would know.

THE COURT: Sustained.

(Tr. at 61-62.)

{¶ 25} Thaler contends this testimony about his mother removing parts form "the gun" on August 10, 2017 negates any reasonable inference that the weapon was operable a week later on August 17, 2017 when he vandalized the restaurant. We disagree for at least three reasons. First, we read the foregoing exchange as including an objection to A.D.'s testimony about Thaler's mother removing parts from the gun and the trial court sustaining the objection. If so, then that testimony was not admitted, and the

record contains no evidence that the gun Thaler had in the restaurant was inoperable. Second, Thaler argues that his attorney's objection challenged A.D.'s testimony identifying *which gun* his mother had modified, not her testimony about his mother modifying a gun. But if this is true, then the testimony about Thaler's mother removing parts from a non-specified gun is irrelevant. If the trial court sustained an objection to A.D. identifying which gun Thaler's mother had modified, then the record contains no evidence to support a finding that the gun she modified was the gun in the restaurant. Third, even if we assume, arguendo, that on August 10, 2017 Thaler's mother modified the gun he carried in the restaurant on August 17, 2017, he had one week to get the parts back from her and to make the gun operable again. A trier of fact reasonably might infer operability from the fact that Thaler had the gun with him in the restaurant when he committed an act of vandalism. Any argument to the contrary would go to the weight of the evidence, not its legal sufficiency (which is the basis for Thaler's assignment of error).

{¶ 26} Viewing the evidence in a light most favorable to the prosecution, we believe a rational trier of fact could find beyond a reasonable doubt that the handgun Thaler had with him in the restaurant on August 17, 2017 was operable. The third assignment of error is overruled.

{¶ 27} In his fourth assignment of error, Thaler challenges the consecutive sentences he received. His entire argument is as follows:

> Mr. Thaler argues that since the firearms specifications and the Having Weapons Under Disability charges were not proven, the court erred when it premised, in part, its justification for consecutive sentences upon the conviction of Having Weapons Under Disability and the firearm

specifications. From that, Mr. Thaler argues that, in the event the conviction for Having Weapons Under Disability, and the firearms specification[s] are reversed, the Trial Court, during resentencing, must exclude any consideration of those offenses when determining the length of any sentences for any other convictions.

(Appellant's brief at 14-15.)

{¶ 28} Upon review, we are unpersuaded by Thaler's argument. In our analysis above, the only error we found involved the imposition of a three-year prison term for the firearm specifications. We concluded that the lesser, one-year specification was applicable. This modification has no impact on the other aspects of Thaler's sentence, which involved convictions for having a weapon while under disability, vandalism, and domestic violence.

{¶ 29} At sentencing, the trial court started by noting "that Mr. Thaler does have an extensive criminal history, these constituting his seventh and eighth felony convictions, and with the domestic violence charge being, one, offense of violence with there being other domestic violence felony charges on his history." (Tr. at 204). The trial court then imposed concurrent 12-month prison terms for having a weapon while under disability and vandalism in Montgomery C.P. No. 2018-CR-2522. The trial court imposed a three-year prison term for domestic violence in Montgomery C.P. No. 2017-CR-3796. It ordered the sentences in the two cases to be served consecutively, resulting in an aggregate four-year sentence on the substantive offenses. (The trial court also merged the two firearm specifications and imposed a three-year sentence, which by law was required to be served consecutively.)

{¶ 30} In support of requiring the 12-month sentence in Montgomery C.P. No. 2018-CR-2522 and the three-year sentence in Montgomery C.P. No. 2017-CR-3796 to be served consecutively, the trial court made the following findings under R.C. 2929.14(C)(4):

> * * * [R]unning the consecutive sentences as between the two cases, the Court does make the finding that the consecutive service is necessary to protect the public from future crime or to punish the offender. The consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger that he poses to the public.
>
> The offender committed one or more of the multiple offenses while he was awaiting trial or sentencing or was under a sanction imposed pursuant to Revised Code 2929.16, 17, 18 or was on PRC.
>
> At least two of the multiple offenses were committed as part of one or more courses of conduct and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct and the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by Mr. Thaler.

(Tr. at 205-206.)

{¶ 31} None of the foregoing findings are impacted by our determination that Thaler is subject to a one-year sentence for the firearm specifications rather than a three-

year sentence. Nothing in our analysis of the firearm-specification issue affects the trial court's determination that (partially) consecutive sentences are warranted for the substantive offenses in the two cases. The fourth assignment of error is overruled.

**{¶ 32}** Having sustained Thaler's first two assignments of error challenging his three-year sentence for the merged firearm specifications, the three-year firearm specification convictions are reversed. The matter is remanded for the trial court to impose a one-year firearm-specification sentence, as provided in R.C. 2941.141(A). *See Myrick* at ¶ 88. In all other respects, the trial court's judgment is affirmed.

. . . . . . . . . . . . .


FROELICH, J. and WELBAUM, J., concur.


Copies sent to:

Mathias H. Heck Jr.
Andrew T. French
Christopher C. Green
Hon. Mary L. Wiseman