THE STATE OF OHIO, APPELLEE, *v.* RIGGINS, APPELLANT.

(No. 39959—Decided March 6, 1980.)

*Mr. John T. Corrigan,* prosecuting attorney, for appellee.
*Mr. David Lawrence,* for appellant.

JACKSON, P. J. On February 5, 1976, defendant-appellant, Reginald Riggins, was indicted on one count of aggravated murder with specifications, one count of aggravated robbery, and one count of possessing criminal tools. On March 1, 1976, appellant pled guilty to aggravated murder without specifications. The prosecution thereupon dismissed the remaining charges against appellant.[1] Appellant was immediately sentenced to life in prison.

On October 8, 1978, appellant filed a motion for leave to file a delayed appeal. This court granted appellant's motion on October 24, 1978. Appellant assigns two errors for review by this court.

*Assignment of Error Number One:*

"Cuyahoga County Court of Common Pleas did not have jurisdiction over the sixteen year old defendant."

Appellant asserts that the Court of Common Pleas of Cuyahoga County was without jurisdiction to try him as an adult because the Juvenile Court failed to properly relinquish jurisdiction over him. Appellant was sixteen years old at the time that the crime was committed. Under R. C. 2151.23[2] and 2151.25,[3] the Juvenile Court had exclusive jurisdiction over him until such time as it relinquished jurisdiction. The Juvenile Court, however, may relinquish jurisdiction over a juvenile to the Court of Common Pleas pursuant to R. C. 2151.26, which provides:

---

[1] The transcript from the March 1, 1976 proceeding indicates that appellant was separately charged with one count of aggravated robbery and three counts of receiving stolen property. These charges were also dismissed in exchange for appellant's plea of guilty to aggravated murder without specifications.

[2] R. C. 2151.23 provides in part:

"(A) The juvenile court has exclusive original jurisdiction under the Revised Code:

"(1) Concerning any child who on or about the date specified in the complaint is alleged to be a juvenile traffic offender, delinquent, unruly, abused, neglected, or dependent[.]"

[3] R. C. 2151.25 provides:

"When a child is arrested under any charge, complaint, affidavit, or indictment, whether for a felony or a misdemeanor, proceedings regarding such child shall be initially in the juvenile court in accordance with this chapter. If the child is taken before a judge of a county court, mayor, judge of the municipal court, or judge of the court of common pleas other than a juvenile court, such judge of a county court, mayor, judge

"(A) *After a complaint has been filed alleging that a child is delinquent by reason of having committed an act which would constitute a felony if committed by an adult, the court at a hearing may transfer the case for criminal prosecution to the appropriate court having jurisdiction of the offense,* after making the following determinations:

"(1) The child was fifteen or more years of age at the time of the conduct charged;

"(2) There is probable cause to believe that the child committed the act alleged;

"(3) After an investigation including a mental and physical examination of such child made by the Ohio youth commission, a public or private agency, or a person qualified to make such examination, that there are reasonable grounds to believe that:

"(a) He is not amenable to care or rehabilitation in any facility designed for the care, supervision, and rehabilitation of delinquent children;

"(b) The safety of the community may require that he be placed under legal restraint, including, if necessary, for the period extending beyond his majority.

"(B) The child may waive such examination if the court finds such waiver competently and intelligently made. Refusal to submit to a mental and physical examination by the child constitutes waiver thereof.

"(C) Notice in writing of the time, place and purpose of such hearing shall be given to his parents, guardian, or other custodian and his counsel at least three days prior to the hearing.

"(D) *No child, either before or after reaching eighteen years of age, shall be prosecuted as an adult for an offense committed prior to becoming eighteen unless the child has been transferred as provided in this section.* Any prosecution that is had in a criminal court on the mistaken belief that the child was over eighteen years of age at the time of the commission

of the municipal court, or judge of the court of common pleas shall transfer the case to the juvenile court, whereupon proceedings shall be in accordance with this chapter. Upon such transfer all further proceedings under the charge, complaint, information, or indictment shall be discontinued in the court of said judge of a county court, mayor, municipal judge, or judge of the court of common pleas other than a juvenile court, and the case relating to such child shall thenceforth be within the exclusive jurisdiction of the juvenile court."

of the offense shall be deemed a nullity and the child shall not be considered to have been in jeopardy on the offense.

"(E) Upon such transfer the juvenile court shall state the reasons therefor and order such child to enter into a recognizance with good and sufficient surety for his appearance before the appropriate court for such disposition as such court is authorized to make for a like act committed by an adult. Such transfer abates the jurisdiction of the juvenile court with respect to the delinquent acts alleged in the complaint." (Emphasis added.)

R. C. 2151.26(D) expressly provides that "[n]o child *** shall be prosecuted as an adult***unless the child has been transferred as provided in this section." Failure to comply with the provisions of R. C. 2151.26, therefore, deprives the Court of Common Pleas of jurisdiction over a juvenile defendant.

The state asserts that appellant waived any objections he might have had to the proceedings before the Juvenile Court by pleading guilty; specifically, the state claims that appellant waived his right to confrontation of witnesses, citing *State* v. *Buchanan* (1974), 43 Ohio App. 2d 93. The first paragraph of the syllabus of that opinion states as follows:

"A defendant in a criminal case is guaranteed certain constitutional rights which he may invoke or choose to waive and which are contained in the Fifth and Sixth Amendments of the United States Constitution. These rights include the privilege against self-incrimination, the right to trial by jury, the right to assistance of counsel, the right to confront witnesses against him, the right to be informed of the nature and cause of the accusation, and the right to compulsory process for obtaining witnesses in his favor. An accused's constitutional rights apply whether he is tried or enters a plea of guilty. When a defendant withdraws a plea of not guilty and/or enters a plea of guilty he waives the foregoing constitutional rights." See, also, *id.,* at page 96.

Some errors are, however, not waived by a plea of guilty. Among these are errors which deprive the trial court of subject-matter jurisdiction over the case. This has been an established principle of Ohio criminal law since at least 1875.

"We suppose, notwithstanding the plea of guilty, the defendant may object to the jurisdiction of the court, or the

grand jury, over the subject-matter, or that no offense was charged against him; but not for any defect of form or manner of stating the facts, if there was a substantial charge of an offense." *Carper* v. *State* (1875), 27 Ohio St. 572, 575.

The Ohio Supreme Court recently held that a plea of guilty does not preclude a defendant from challenging the constitutionality of the statute under which he was convicted. *State* v. *Wilson* (1979), 58 Ohio St. 2d 52, appeal dismissed (1979), 444 U.S. 804. Other Ohio courts have permitted defendants who have pled guilty to appeal their convictions because the offense was committed before the effective date of the statute, *State* v. *Flynt* (1975), 44 Ohio App. 2d 315, because the statute of limitations had run, *Akron* v. *Akins* (1968), 15 Ohio App. 2d 168, and because the arresting officer had failed to file a proper affidavit, *In re Van Hoose* (1951), 61 Ohio Law Abs. 256 (writ of habeas corpus allowed). In each of the latter three cases the respective Court of Appeals held that the trial court was without subject-matter jurisdiction to accept the defendant's guilty plea.

The United States Supreme Court has stated that:

"* * * a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction, if factual guilt is validly established." (Emphasis in original.) *Menna* v. *New York* (1975), 423 U.S. 61, fn. 2, at pages 62-63.

In *Menna,* the Supreme Court held that the defendant did not, by pleading guilty, waive a double jeopardy claim:

"We simply hold that a plea of guilty to a charge does not waive a claim that—judged on its face—the charge is one which the State may not constitutionally prosecute." *Id.,* fn. 2, at page 63.

The claimed violation in the present case does not bear on the issue of factual guilt; rather, the violation goes to the power of the Court of Common Pleas to try appellant as an adult. Defects in the proceedings through which the Juvenile Court relinquished jurisdiction may affect the subject-matter

jurisdiction of the Court of Common Pleas and may be asserted on appeal, even if no objection to the jurisdiction of the court was raised below.[4]

The Supreme Court has further held that where a Juvenile Court is accorded original and exclusive jurisdiction over a defendant-minor, said minor is entitled to a hearing prior to relinquishment of jurisdiction to a criminal court. In *Kent* v. *United States* (1966), 383 U.S. 541, at page 556, the court stated:

"It is clear beyond dispute that the waiver of jurisdiction is a 'critically important' action determining vitally important statutory rights of the juvenile."

The court indicated that at such a hearing the minor is entitled to assistance of counsel, access to his social records, and a statement of reasons for the decision of the Juvenile Court. *Id.,* at page 557. The court did not otherwise specify the rights that should be accorded to the defendant at such a hearing, other than to say that the hearing need not conform with all the requirements of a criminal trial or an administrative hearing:

"We do not mean by this to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment." *Id.,* at page 562.

More recent Supreme Court cases have not clarified the requirements of the United States Constitution in the context of a relinquishment proceeding in Juvenile Court. In *In re Gault* (1967), 387 U.S. 1, at page 57, the court held that:

"We now hold that, absent a valid confession, a determination of delinquency and an order of commitment to a state institution cannot be sustained in the absence of sworn testimony subjected to the opportunity for cross-examination in accordance with our law and constitutional requirements."

This rule expressly applies only to a final adjudication of

[4] The legislature has indicated that the Court of Common Pleas is without jurisdiction to try a person "on the mistaken belief that the child was over eighteen years of age at the time of the commission of the offense***" and that any such prosecution is a "nullity." R. C. 2151.26(D). This is strong evidence of the legislature's intention that a minor may not voluntarily waive his right to be tried in Juvenile Court. The decision to try a child as an adult should be made only after full compliance with the requirements of R. C. 2151.26 and the United States Constitution.

delinquency. The court observed, in a footnote, that the rights accorded juveniles in *In re Gault* may not apply to other steps of the juvenile process:

"The problems of pre-adjudication treatment of juveniles, and of post-adjudication disposition, are unique to the juvenile process; hence what we hold in this opinion with regard to the procedural requirements at the adjudicatory stage has no necessary applicability to other steps of the juvenile process." *Id.,* fn. 48, at page 31.

Appellant specifically claims that he was denied due process of law at the relinquishment proceeding because he was denied the opportunity to confront the witnesses against him. Appellant states that the only evidence before the court was the confession of a codefendant; this confession was read into evidence by a police officer. This evidence was apparently used to support the finding of the Juvenile Court that there was probable cause to believe that the appellant committed the crimes charged against him.[5]

The Ohio Supreme Court has held that hearsay evidence is admissible at a relinquishment proceeding in Juvenile Court in the form of psychiatric reports from the Ohio Youth Commission Juvenile Diagnostic Center. *State* v. *Carmichael* (1973), 35 Ohio St. 2d 1, certiorari denied (1974), 414 U.S. 1161. These reports related to the issues of whether the defendant was committable to an institution for the mentally retarded or mentally ill, whether he was amenable to care or rehabilitation in juvenile facilities, and whether the safety of the community required his confinement past the age of majority. The reports had no relationship to the issue of probable cause. In fact, at the relinquishment proceeding in *Carmichael* an eyewitness testified as to the defendant's involvement, thus proving probable cause with competent evidence. *Id.,* at page 2.

This court is unable to rule on the sufficiency and admissibility of the evidence submitted to the Juvenile Court on the

---

[5] Appellant asserts that he was adjudged a delinquent on the basis of hearsay evidence in violation of *In re Gault, supra.* Appellant draws this conclusion from former R. C. 2151.26 (see 132 Ohio Laws 914) which required the Juvenile Court to adjudge the defendant to be a delinquent before relinquishing jurisdiction to the Court of Common Pleas. See *In re Mack* (1970), 22 Ohio App. 2d 201 (interpreting former R. C. 2151.26). Since 1969, however, R. C. 2151.26, as amended (see 133 Ohio Laws 2049-2050), has not required a finding of delinquency, but only a finding of probable cause that the defendant committed the acts with which he is charged.

issue of probable cause for the reason that appellant has failed to provide this court with a transcript of the hearing before the Juvenile Court at which this evidence was presented.[6] Without the record of this proceeding we are unable to determine whether appellant's description of the evidence is correct, whether the evidence was admissible under an exception to the hearsay rule, and whether appellant objected to the introduction of the hearsay evidence. This assignment of error, not being supported by the record, is overruled.

*Assignment of Error Number Two:*

"The trail [*sic*] court erred to the prejudice of defendant appellant in accepting his guilty plea." (Appellant's *pro se* brief.)

"The trial Court committed reversible error in finding that defendant's plea was voluntarily made, and accepting it as such where the record indicates that the prosecutor required [that] the plea bargain was contingent upon both codefendants entering a plea of guilty to the charge of aggravated murder." (Appellant's attorney's brief.)

Guilty pleas are constitutionally valid so long as the plea is voluntarily and intelligently made by the defendant. The fundamental law on this subject is set forth in *Brady* v. *United States* (1970), 397 U.S. 742. The Supreme Court observed in that case that a criminal defendant must take into account numerous circumstances when deciding whether to enter a plea of guilty:

"The voluntariness of Brady's plea can be determined only by considering all of the relevant circumstances surrounding it. Cf. *Haynes* v. *Washington,* 373 U.S. 503, 513 (1963); *Leyra* v. *Denno,* 347 U.S. 556, 558 (1954). One of these circumstances was the possibility of a heavier sentence following a guilty verdict after a trial. It may be that Brady, faced with a strong case against him and recognizing that his chances for acquittal were slight, preferred to plead guilty and thus limit the penalty to life imprisonment rather than to elect a jury

---

[6] The Juvenile Court hearing on the issue of probable cause was held on December 30, 1975. The court's judgment entry of the same date indicates that the appellant's request for a court reporter was granted. Appellant has failed to include a transcript of the December 30, 1975 hearing in the record on appeal. The only transcript in the record on appeal from the Juvenile Court is that for the hearing of January 14, 1976, at which the court ruled on the issues of appellant's mental status, the likelihood of rehabilitation, and necessity for incarceration past the age of majority.

trial which could result in a death penalty. But even if we assume that Brady would not have pleaded guilty except for the death penalty provision of §1201 (a), this assumption merely identifies the penalty provision as a 'but for' cause of his plea. That the statute caused the plea in this sense does not necessarily prove that the plea was coerced and invalid as an involuntary act." *Id.*, at pages 749-750.

The court held that the state may not so coerce a defendant that he is unable to rationally weigh the advantages and disadvantages of pleading guilty:

"Of course, the agents of the State may not produce a plea by actual or threatened physical harm or by mental coercion overbearing the will of the defendant. But nothing of the sort is claimed in this case; nor is there evidence that Brady was so gripped by fear of the death penalty or hope of leniency that he did not or could not, with the help of counsel, rationally weigh the advantages of going to trial against the advantages of pleading guilty." *Id.*, at page 750.

The court concluded that Brady's fear of the death penalty and his hope of leniency did not render his guilty plea involuntary. *Id.*, at page 758.

Appellant claims that his guilty plea was involuntary because the prosecution insisted that unless both codefendants pled guilty to aggravated murder without specifications, both defendants would be required to stand trial for aggravated murder with specifications.[7] According to appellant, not only could he escape the death penalty only by pleading guilty, but

---

[7] The criteria for imposing death or imprisonment for a capital offense is contained in R. C. 2929.04 (but, see, *Lockett* v. *Ohio* [1978], 438 U.S. 586, and *Bell* v. *Ohio* [1978], 438 U.S. 637), which provides in pertinent part:

"(A) Imposition of the death penalty for aggravated murder is precluded, unless one or more of the following is specified in the indictment or count in the indictment pursuant to section 2941.14 of the Revised Code, and is proved beyond a reasonable doubt:

"* * *

"(7) The offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson, aggravated robbery, or aggravated burglary."

The indictment charged appellant with aggravated murder with the specification that the murder was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit aggravated robbery.

his codefendant could escape the death penalty only if appellant pled guilty.

Appellant sets forth two sets of possible, but contradictory, circumstances in which the prosecutor's action may have elicited his guilty plea against his will. In his *pro se* brief, appellant states:

"This appellant was a friend of the co-defendant Reic Dunn, and had no desire to have the death of his friend on his mind for the rest of his life, nor did he want to die because of what his friends had done."

With respect to this issue, appellant's attorney states in the brief filed on appellant's behalf that the prosecutor's action "presents a defendant with possibilities of threats from the codefendant or others."

Extensive research has failed to disclose a ruling by Ohio courts on the issue of whether the prosecution may offer leniency or threaten harshness toward a third person in attempting to persuade a defendant to plead guilty. Moreover, it appears that the United States Supreme Court has done no more than allude to the problem in a footnote:

"This case does not involve the constitutional implications of a prosecutor's offer during plea bargaining of adverse or lenient treatment for some person *other* than the accused, see ALI Model Code of Pre-Arraignment Procedure, Commentary to §350.3, pp. 614-615 (1975), which might pose a greater danger of inducing a false guilty plea by skewing the assessment of the risks a defendant must consider. Cf. *Brady* v. *United States*, 397 U.S. 742, 758." (Emphasis in original.) *Bordenkircher* v. *Hayes* (1978), 434 U.S. 357, fn. 8, at page 364.

However, several federal circuit courts have considered this issue.[8] The thrust of these decisions is that there is greater

---

[8] In *United States* v. *Tursi* (C.A. 1, 1978), 576 F. 2d 396, the defendant claimed that the prosecutor had promised to recommend probation for defendant's son (a codefendant) in return for defendant's guilty plea. The court held that defendant's plea was voluntary despite the fact that the court did not follow the prosecutor's recommendation.

In *Plunkett* v. *Commr. of Internal Revenue* (C.A. 7, 1972), 465 F. 2d 299, the defendant claimed that he pled guilty to tax fraud in return for charges against his wife being dropped. In a subsequent civil proceeding defendant claimed that he was not estopped by his previous guilty plea since it was not made voluntarily; the court found the plea to have been made voluntarily.

danger of coercion in cases where the prosecution has obtained a guilty plea by offering leniency or threatening harsh treatment of a third person and that such pleas will be closely scrutinized to ensure that they were voluntarily entered.

"So long as the plea is entered knowingly and voluntarily, it has been felt that the advantages which accrue to both prosecution and defendant outweigh its potential abuses. However, it has been recognized that there are special considerations attending a guilty plea offered in consideration of lenient treatment for a person *other* than the defendant. *See Kent v. United States,* 272 F. 2d 795, 798 (1st Cir. 1959); ALI Model Code of Pre-Arraignment Procedure, Commentary to §350.3(d), pp. 615-616 (1975). *Cf. Bordenkircher v. Hayes,* 434 U.S. 357, 364 n. 8, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978); *Crow v. United States,* 397 F. 2d 284, 285 (10th Cir. 1968); *Cortez v. United States,* 337 F. 2d 699, 701-702 (9th Cir. 1964). Generally, the fear has been that there is greater danger of coercion in such a situation and that, accordingly, special care must be taken to ascertain the voluntariness of the guilty plea." (Emphasis in original.) *United States* v. *Tursi* (C.A. 1, 1978), 576 F. 2d 396, 398.

In no case, however, has the mere offer of leniency or threat of harshness to another been held to have rendered the defendant's plea involuntary. We agree with the United States Courts of Appeals for the Ninth and Tenth Circuits that, on a motion for postconviction relief, this allegation would be suffi-

In *United States* v. *Carlino* (C.A. 2, 1968), 400 F. 2d 56, certiorari denied (1969), 394 U.S. 1013, the defendant alleged that he pled guilty on the understanding that charges against his son would be dropped. The court held that this allegation did not state a claim of constitutional dimensions entitling defendant to an evidentiary hearing for postconviction relief.

In *Cortez* v. *United States* (C.A. 9, 1964), 337 F. 2d 699, certiorari denied (1965), 381 U.S. 953, the defendant alleged that his guilty plea was involuntary because it was entered to enable his pregnant wife to plead guilty to a lesser charge. The court held that this allegation was sufficient to entitle defendant to an evidentiary hearing on his motion to vacate his conviction. However, the court also held that defendant failed to present sufficient evidence at the evidentiary hearing tending to show that his plea was not voluntarily made.

In *Crow* v. *United States* (C.A. 10, 1968), 397 F. 2d 284, the defendant alleged that his plea was involuntary because the prosecution threatened to charge a third party with complicity unless defendant pled guilty. The court held that this allegation was sufficient to entitle defendant to an evidentiary hearing on his motion for postconviction relief. The court stated that "***[i]mprobable as are the allegations, appellant had the right to support them by evidence.***" *Id.,* at page 286.

cient to entitle the defendant to an evidentiary hearing to determine the voluntariness of his plea; in such a case the defendant would be required to present evidence on the issue of whether his will was actually overborne by the offers or threats of the prosecutor. *Cortez* v. *United States* (C.A. 9, 1964), 337 F. 2d 699, certiorari denied (1965), 381 U.S. 953; *Crow* v. *United States* (C.A. 10, 1968), 397 F. 2d 284.

In the case at bar, the record does not disclose any evidence presented by appellant on the issue of whether his will was actually overcome by the prosecution's alleged threat to make his codefendant stand trial unless appellant pled guilty. Appellant did not apply for postconviction relief pursuant to R. C. 2953.21, and thereby obtain an evidentiary hearing at which he might have introduced such evidence. Instead, he filed this appeal. The record does not support appellant's contention that the prosecution was guilty of "coercion overbearing the will of the defendant" or that defendant was "so gripped by fear of the death penalty or hope of leniency***[with respect to his codefendant] that he did not or could not***rationally weigh the advantages of going to trial against the advantages of pleading guilty." *Brady* v. *United States, supra,* at page 750. With the evidence in this posture, this assignment of error is overruled.

Accordingly, the judgment of the Court of Common Pleas of Cuyahoga County is affirmed.

*Judgment affirmed.*

STILLMAN and SILBERT, JJ., concur.

SILBERT, J., retired, of the Eighth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.