[Cite as *State v. Amos*, 2016-Ohio-1319.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-150265<br>TRIAL NO. B-1403269 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| LANDYN AMOS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  March 30, 2016

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Rachel Lipman Curran*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

Office of the Ohio Public Defender and *Sheryl Trzaska,* Assistant State Public Defender, for Defendant-Appellee.

Please note:  this case has been removed from the accelerated calendar.

**FISCHER, Presiding Judge.**

{¶1} Defendant-appellant Landyn Amos appeals his convictions, following guilty pleas, for three counts of aggravated robbery and the accompanying one-year firearm specifications and improperly handling a firearm in a motor vehicle. Amos, who was 15 years old at the time he committed the offenses, challenges the juvenile court's decision to transfer jurisdiction of his cases to the common pleas court. He argues that the state failed to present sufficient evidence to demonstrate probable cause that he had committed the aggravated robbery of Sergeant Scott Owen and that the juvenile court abused its discretion in determining that he was not amenable to rehabilitation in the juvenile system. Finding neither argument meritorious, we affirm his convictions.

## I. Juvenile Court Proceedings

{¶2} The state filed multiple complaints in the Hamilton County Juvenile Court charging Amos with delinquency for acts that would have constituted the crimes of aggravated robbery with firearm specifications, possession of cocaine, and improperly possessing a firearm in a motor vehicle, if committed by an adult. The state then filed a motion asking the juvenile court to relinquish jurisdiction in each of the cases against Amos, so that it could prosecute Amos in the common pleas court.

{¶3} At the probable-cause hearing, the state presented testimony from Amos's adult codefendant, Edna Liban, the victims of the first two aggravated robberies, Dawod Dawod and Philip James, as well as Sergeant Scott Owen, and Detectives Dave Hubbard and Mark Meyer, who had set up an undercover operation to apprehend Amos and his codefendants.

{¶4} Dawod Dawod testified that on March 25, 2014, he had responded to a Craigslist ad for an iPhone. Dawod drove to an apartment complex on Galbraith Road.

When he arrived, a woman came to his car and stated that she needed to retrieve the cell phone. She left briefly and then returned to his vehicle, entering the passenger side. Dawod, who had rolled his window down, then felt a gun pressed against his neck. Dawod testified that two men wearing black clothes and skull caps were holding guns pointed at him. One of the men told Dawod to "give him everything he had." Dawod gave the men $200. The men then told Dawod to leave. Dawod put his car in reverse, the woman jumped out of his car, and he drove away.

{¶5}    Philip James testified that on March 26, 2014, he had responded to a Craigslist ad to buy a laptop computer for $500. After texting with the buyer, he drove to an apartment complex on Galbraith Road. When he arrived, a woman walked up to his car and told him that she needed to retrieve the laptop computer from inside the apartment complex. She walked towards the apartment complex and returned to his car within ten to 15 seconds with a bag. She asked James to unlock the front passenger door.

{¶6}    As the woman opened the front passenger door, a man wearing dark clothing ran along the passenger side of James's vehicle. He pointed a gun at James. A second man, who had approached from the driver's side, opened James's car door and put a gun to his neck. The men told James to give them everything he had. James gave the men his phone and wallet, as well as some cash, credit cards, and a check he had placed inside the vehicle's armrest. James testified that he had had $600 in his wallet and $24 in the armrest.

{¶7}    Edna Liban testified that on March 25, 2014, she was with Amos and Jarred Shearer. They had placed a fictitious ad on Craigslist for an iphone and they intended to rob the buyer, who they were meeting off of West Galbraith Road. She testified that her job was to bring the buyer in and to make the buyer feel comfortable by

talking to him so Shearer and Amos could then rob him. Liban testified that she had communicated with the buyer on her cell phone, telling the buyer where to meet her. When the buyer arrived, she greeted him and then entered his car. Shearer and Amos then came around the vehicle. She heard them tell the buyer to "shut up and all that stuff" but she didn't know what had happened after that because she had run away.

{¶8} Liban testified that on March 26, 2014, she spoke with a potential buyer and set up a meeting at the same location. She had set up a fictitious Craigslist ad for a computer. Shearer and Amos were with her at the time. When the buyer arrived, she ran, so she didn't see the actual robbery. She testified that she did not know what was taken during that robbery.

{¶9} Liban testified that on March 28, 2014, she, her boyfriend, Shearer, and Amos had planned to meet another buyer off of Hamilton Avenue. Shearer's job that day was to "stick them up," while Amos's job was to wait in the car with Liban's boyfriend. Liban testified that she approached the car, but she ran when she saw the buyer, whom she later learned was really an undercover police officer, pull out a gun. Liban testified that she did not know if Shearer and Amos had guns that day.

{¶10} Sergeant Scott Owen testified that on March 28, 2014, he came into contact with Shearer and Amos. He had been investigating two robberies that had occurred on March 25, 2014, and March 26, 2014. Based upon the information the victims had provided, the police knew the robberies had been committed with the same modus operandi, at the same location, and by the same people.

{¶11} In an effort to apprehend the perpetrators, the police responded to one of the same Craigslist ads that the two victims had responded to. They sent text messages to Liban, who was using one of the victim's stolen cell phone, and arranged for Sergeant Owen to meet Liban. Police officers surrounded the area where Sergeant

Owen had agreed to meet Liban. Owen planned to arrest Liban and take her into custody, while the remaining officers secured Amos and Shearer.

{¶12} When Sergeant Owen arrived undercover and in plainclothes, however, Liban and Shearer were sitting on a driveway wall outside an apartment complex. They stood up and exchanged pleasantries with Sergeant Owen. Shearer and Liban then walked to the back of Sergeant Owen's car. Sergeant Owen saw Shearer, who was wearing a hooded sweatshirt, place his hands in the front pocket and remove a gun. Shearer and Liban then moved toward the rear passenger door of Sergeant Owen's vehicle. Shearer pushed Liban forward and opened the rear passenger door. He entered the vehicle with the gun pointed at Sergeant Owen's head.

{¶13} Sergeant Owen testified that he was trying to avoid getting shot in the back of the head, so he could not recall if Shearer had said anything to him as he was pointing the gun at him. Sergeant Owen opened his door, pulled out his gun, pointed it at Shearer, and yelled, "Don't you * * * do it" as Sergeant Owen fell out of the car onto the ground. Shearer took off running. Sergeant Owen chased Liban, who was running toward the opposite end of the street. As he chased Liban, he heard two gunshots.

{¶14} Sergeant Owen caught up with Liban and took her into custody. He then saw Shearer trip and fall. As he did so, the gun Shearer had been holding slid away from him onto the ground. Shearer was immediately taken into custody by another officer. Sergeant Owen testified that the police found Amos sitting in a parked car at the opposite end of the street with Liban's boyfriend. Amos had a loaded gun at his feet and crack cocaine in his pocket. Police also found the victim's stolen cell phone in the parked car. Sergeant Owen identified a lab report that identified the substance found on Amos as cocaine and photographs that police had taken at the scene of the March 28, 2014 robbery.

{¶15}   Detective Dave Hubbard with the Colerain Police Department testified that he was working undercover with Sergeant Owen on March 28, 2014, when he saw Shearer running with a weapon in his hand.  He thought Shearer was going to fire the weapon at him, so he pointed his gun at Shearer and fired two times, striking Shearer in the hand.  Shearer continued running, but he was eventually apprehended.  Officer Hubbard testified that he had shot Shearer because he had feared for his life.

{¶16}   Detective Mark Meyer testified that he had interviewed Amos on April 2, 2014, in the presence of Amos's attorney.  Amos admitted to having a gun and being involved in the March 28, 2014 robbery.  Although Amos had told Detective Meyer he had remained in the parked vehicle during the course of the robbery, Detective Meyer testified that he saw Amos running toward the parked car.  Amos also admitted that he had been one of the two gunmen involved in the March 25, 2014 robbery.  He told Detective Meyer that while Liban had been talking to the victim, he had approached the victim's car and had robbed him at gunpoint.   Amos stated he had received $50 from the March 25, 2014 robbery.  He denied any involvement in the March 26, 2014 robbery.

{¶17}   At the conclusion of the hearing, the juvenile court found probable cause to believe that Amos had committed all the delinquent acts as alleged in the complaints. The juvenile court, in accordance with R.C. 2152.12(C), ordered an investigation into Amos's social history, education, family situation, and mental health.   Dr. James Hawkins prepared a report, which was provided to the juvenile court. Following an amenability hearing, the juvenile court found that Amos was not amenable to rehabilitation in the juvenile system and relinquished jurisdiction over his cases to the common pleas court.

## II.   Common Pleas Court Proceedings

{¶18}   The Hamilton County Grand Jury indicted Amos for three counts of aggravated robbery with both one-year and three-year firearm specifications, three counts of robbery, one count of possession of cocaine, and one count of improperly handling a firearm in a motor vehicle. Amos pleaded guilty to the three counts of aggravated robbery and the accompanying one-year firearm specifications, and to improperly handling a firearm in a motor vehicle. The remaining charges and firearm specifications were dismissed as part of the plea agreement.

{¶19}   The trial court sentenced Amos to four years in prison on each of the aggravated-robbery counts, one year in prison on each of the corresponding firearm specifications, and 18 months in prison for the improper-handling-of-a-firearm-in-a-motor-vehicle count. It ordered the sentences for the aggravated-robbery counts and the improper-handling-of-a-firearm-in-a-motor-vehicle count to be served concurrently with each other, but consecutively to each of the one-year firearm specifications, for a total aggregate sentence of seven years in prison.

### III.   Analysis of Discretionary-Bindover Procedure

{¶20}   In his first and second assignments of error, Amos argues the juvenile court erroneously transferred jurisdiction of his cases to the common pleas court because the state's evidence was insufficient to establish probable cause that he committed the aggravated robbery of Sergeant Owen, and the trial court improperly determined that he was not amenable to rehabilitation in the juvenile system.

{¶21}   The juvenile court has exclusive original jurisdiction over proceedings involving a child alleged to have committed a delinquent act. *See* R.C. 2151.23(A)(1) and 2151.25. This means that proceedings concerning juveniles must originate in juvenile court and continue in juvenile court until that court relinquishes jurisdiction

7

by way of the bindover procedures set forth in R.C. 2152.10 and 2152.12. *State v. Golphin*, 81 Ohio St.3d 543, 692 N.E.2d 608 (1998). The Revised Code contemplates two types of bindover procedures, those that are mandatory and those that are discretionary. *See State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894, ¶ 10.

{¶22}   Here, the state requested the juvenile court to relinquish jurisdiction over Amos's cases pursuant to Juv.R. 30 and R.C. 2152.12(B), which permits the discretionary bindover of a juvenile who is 14 years or older at the time of the offense if probable cause exists to believe that the juvenile committed an act that would be a felony if committed by an adult, and the juvenile is not amenable to rehabilitation within the juvenile system and the safety of the community may require him to be subject to adult sanctions.

{¶23}   The Ohio Supreme Court has held that when the state requests a discretionary bindover, the juvenile court must first determine the age of the child and whether probable cause exists to believe that the juvenile committed the act charged. *In re M.P.,* 124 Ohio St.3d 445, 2010-Ohio-599, 923 N.E.2d 584, ¶ 12. If the juvenile court finds that probable cause exists and the child is eligible by age, the court must then continue the proceeding for a full investigation. This investigation includes a mental examination of the child, a hearing to determine if the child is amenable to care or rehabilitation within the juvenile system or whether the safety of the community may require that the child be subject to adult sanctions, and the consideration of 17 other statutory criteria to determine whether a transfer is appropriate. *Id.*, citing Juv.R. 30(C); R.C. 2152.12(B),(C),(D), and (E).

## A. Waiver

{¶24}    Before we can reach the merits of Amos's assignments of error, we must address the state's argument that Amos has waived his challenge to the juvenile court's bindover of his cases by entering a guilty plea in the common pleas court. The state relies on the Ohio Supreme Court's recent decision in *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, as support for this position.

{¶25}    In *Quarterman*, the defendant, who had been mandatorily bound over from the juvenile court, had pleaded guilty in the common pleas court to one count of aggravated robbery and the accompanying firearm specification. *Id.* at ¶ 1. The issue before the Supreme Court was whether the defendant could raise for the first time on appeal several constitutional challenges to Ohio's mandatory-bindover procedure. *Id.* at ¶ 2. The Ohio Supreme Court held that the defendant had forfeited his ability to bring such constitutional challenges by failing to raise them in the first instance in either the juvenile court or the common pleas court. *Id.* at ¶ 2. The Supreme Court further acknowledged that it had the discretion to entertain a plain-error challenge to the constitutionality of the mandatory-bindover statutes, but it concluded that the defendant had failed to demonstrate that applying the mandatory bindover statutes rose to the level of plain error. *Id.* at ¶ 2, 15, and 22. As a result, the Supreme Court declined to address the constitutionality of Ohio's mandatory-bindover procedures.

{¶26}    We find *Quarterman* to be inapposite. Amos has not raised a constitutional challenge to the bindover statutes. Rather, his argument is that the common pleas court was without jurisdiction to prosecute him as an adult because he was improperly bound over to the common pleas court. The Ohio Supreme Court has held that a defendant may not immediately appeal a juvenile court's order

transferring jurisdiction of his case to the common pleas court, but must wait to appeal any error stemming from the order following a final judgment in the common pleas court. *See State v. McKinney*, 1st Dist. Hamilton Nos. C-140743 and C-140744, 2015-Ohio-4398, ¶ 8, citing *In re Becker*, 39 Ohio St.2d 84, 87, 314 N.E.2d 158 (1974); *State ex rel. Torres v. Simmons*, 68 Ohio St.2d 118, 119, 428 N.E.2d 862 (1981).

{¶27} Amos, moreover, could not have challenged in the common pleas court the juvenile court's bindover order because the common pleas court had no jurisdiction to review the juvenile court's bindover order for error. *See State v. Harris*, 1st Dist. Hamilton No. C-050160, 2006-Ohio-716, ¶ 17, citing *State v. Whiteside*, 6 Ohio App.3d 30, 37, 452 N.E.2d 332 (3d Dist.1982); *see also State v. Washington*, 2d Dist. Montgomery No. 20226, 2005-Ohio-6546, ¶ 8.

{¶28} The weight of Ohio appellate authority, moreover, holds that defects in the juvenile court's bindover proceedings do not relate to a defendant's factual guilt, but to the subject-matter jurisdiction of the common pleas court to try the juvenile as an adult, and such defects may not be waived by a guilty plea. *See State v. Riggins*, 68 Ohio App.2d 1, 5, 426 N.E.2d 504 (8th Dist.1980); *State v. Wilson*, 73 Ohio St.3d 40, 44, 652 N.E.2d 196 (1995) (holding that the juvenile court has exclusive subject-matter jurisdiction over any case concerning a child who is alleged to be delinquent absent a proper bindover procedure); *Gaskins v. Shiplevy*, 74 Ohio St.3d 149, 656 N.E.2d 1282 (1995) (holding the defendant's claim of error in a bindover proceeding survived his guilty plea*)*; *State v. Harrell*, 10th Dist. Franklin No. 91AP-226, 1992 Ohio App. LEXIS 1279, *3 (Mar. 19, 1992) (holding that the defendant's statutory challenge to the juvenile court's amenability determination was not waived by his guilty plea because it focused not on his factual guilt, but upon

alleged defects in the proceedings through which the juvenile court had relinquished jurisdiction); *State v. Crawford*, 2d Dist. Montgomery No. CA 17132, 1998 Ohio App. LEXIS 5562, *7 (Nov. 25, 1998) (holding that claimed error in the juvenile transfer affected the common pleas court's jurisdiction and could not be waived by guilty plea); *State v. Legg*, 4th Dist. Pickaway No. 14CA23, 2016-Ohio-801, ¶ 24-31 (collecting and following cases considering defendants' claims of improper bindover due to the sufficiency of the probable-cause evidence despite defendants' guilty pleas); *State v. Mays*, 2014-Ohio-3815, 814 N.E.3d 850, ¶ 17 (8th Dist.); *State v. Poole*, 8th Dist. Cuyahoga No. 98153, 2012-Ohio-5739, ¶ 1, fn. 1; *State v. Talbott*, 7th Dist. Mahoning No. 07 MA 225, 2008-Ohio-6300, ¶ 17; *State v. Kitchen*, 5th Dist. Ashland No. 02CA056, 2003-Ohio-5017, ¶ 80; *State v. Pruitt*, 11th Dist. Trumbull No. 2001-T-021, 2002-Ohio-7164, ¶ 28-29.

{**¶29**} Because we see no reason to depart from the weight of authority, we proceed to address the merits of Amos's assignments of error on appeal.

### B. Probable Cause

{**¶30**} Amos first argues that the state failed to present sufficient evidence to establish probable cause to support a charge that, had it been committed by an adult, would have constituted the crime of aggravated robbery as it relates to Sergeant Owen.

{**¶31**} To establish probable cause for the aggravated-robbery charge relating to Sergeant Owen, the state had the burden to provide credible evidence that Amos or a codefendant, in attempting or committing a theft offense, or in fleeing immediately after the attempt, had a deadly weapon on or about his person or under his control and either displayed the weapon, brandished it, indicated that he possessed it, or used it. *See* R.C. 2911.o1(A)(1); *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-

11

5307, 897 N.E.2d 629, ¶ 62. To meet this standard, the state had to produce evidence that raised more than a mere suspicion of guilt, but it did not have to produce evidence proving guilt beyond a reasonable doubt. *In re A.J.S.* at ¶ 62. Whether the state has presented sufficient evidence to demonstrate probable cause to believe the juvenile has committed the act charged is a question of law that an appellate court reviews de novo. *In re M.P.,* 124 Ohio St.3d 445, 2010-Ohio-599, 923 N.E.2d 584, at ¶ 13, citing *In re A.J.S.* at ¶ 47.

{¶32} Amos argues the state failed to show that a theft offense or an attempted theft offense had been committed because Shearer, his codefendant, did not state "this is a robbery," did not ask Sergeant Owen for any money, and did not take anything from Sergeant Owen. We respectfully disagree.

{¶33} Aggravated robbery is itself an offense which prohibits an attempted theft. The Ohio Supreme Court has held that a criminal attempt occurs when the "offender not only intends to commit the completed offense, but also engages in conduct constituting a substantial step toward completing the offense." *See State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 135, citing *State v. Woods*, 48 Ohio St.2d 127, 132, 357 N.E.2d 1059 (1976), *overruled on other grounds*, *State v. Downs*, 51 Ohio St.2d 127, 132, 364 N.E.2d 1140 (1997). To constitute a substantial step, the offender's conduct need not be the last proximate act prior to the commission of the offense, but it "must be strongly corroborative of the actor's criminal purpose." *See Woods* at paragraph one of the syllabus.

{¶34} The " 'substantial step' standard" focuses on the defendant's overt acts that "convincingly demonstrate a firm purpose to commit a crime, while allowing police intervention * * * in order to prevent the crime when the criminal intent becomes apparent." *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, 781 N.E.2d 980, ¶102,

quoting *Woods* at 132. Precisely what conduct constitutes a substantial step depends on the nature of the crime and an evaluation of the facts and circumstances in each particular case. *See Woods* at 132; *Group* at ¶ 100.

{¶35} Here, the state produced sufficient evidence to establish probable cause that Amos was complicit in the aggravated robbery of Sergeant Owen. The state produced credible evidence that Amos, Liban, and Shearer, consistent with their modus operandi in the other two robberies, had planned to rob Sergeant Owen at gunpoint and that they took a number of substantial steps to carry out that aggravated robbery. They had placed an ad on Craigslist to sell a fictitious computer. They communicated with Sergeant Owen to arrange a meeting place to sell him the fake computer. They then drove to that location, where Liban and Shearer met with Sergeant Owen. After conversing with Sergeant Owen, Liban and Shearer had moved to the back of his vehicle. Shearer had then entered Sergeant Owen's car with a loaded firearm pointed at Sergeant Owen's head. The fact that Sergeant Owen pulled out a weapon and prevented Shearer from specifically asking him for money or obtaining any property from him does not mean an attempted theft offense did not occur. *See Woods* at 132; *State v. Ojile*, 1st Dist. Hamilton Nos. C-110677 and C-110678, 2012-Ohio-6015, ¶ 53-54; *State v. Erkins*, 1st Dist. Hamilton No. C-110675, 2012-Ohio-5372, ¶ 41-48; *State v. Mitchell*, 10th Dist. Franklin No. 10AP-756, 2011-Ohio-3818, ¶ 26; *State v. Holmes*, 181 Ohio App.3d 397, 2009-Ohio-1241, 909 N.E.2d 163, ¶ 23 (8th Dist.); *State v. Smith*, 7th Dist. Jefferson No. 97 JE 25, 1999 Ohio App. LEXIS 6164, *10 (Dec. 13, 1999).

{¶36} Because the state presented sufficient evidence to demonstrate probable cause that Amos was complicit in the aggravated robbery of Sergeant Owen, we overrule Amos's first assignment of error.

## C. Amenability

{¶37}   In his second assignment of error, Amos argues the juvenile court abused its discretion by determining that he was not amenable to rehabilitation in the juvenile system and transferring his cases to the common pleas court.

{¶38}   We review a juvenile court's determination regarding a child's amenability to rehabilitation in the juvenile system under an abuse-of-discretion standard. *In re M.P.,* 124 Ohio St.3d 445, 2010-Ohio-599, 923 N.E.2d 584, at ¶ 14. In determining whether a child is subject to rehabilitation, the juvenile court is required to consider a series of statutory factors that weigh for and against the transfer of the juvenile's case to the common pleas court. *See* R.C. 2152.12(B)(3). The factors weighing in favor of transfer are listed in R.C. 2152.12(D), while the factors weighing against transfer are listed in R.C. 2152.12(E). *State v. Dawson*, 1st Dist. Hamilton No. C-130765, 2015-Ohio-488, ¶ 12. In making its decision, the juvenile court need only identify those specific factors that were applicable and that it weighed in making its determination. *See State v. Washington*, 1st Dist. Hamilton No. C-130213, 2014-Ohio-4178, ¶ 19 and 23.

{¶39}   Here, the juvenile court identified several factors it found that weighed in favor of transferring Amos's cases to the common pleas court. The juvenile court stated that after listening to the argument of counsel and the testimony at the probable-cause hearing, it was apparent that Amos was part of a criminal enterprise involving four people who preyed upon individuals using Craigslist as a medium for commerce in the community, and the victims were placed in an "incredibly dangerous situation" by these robberies. The final event resulted in an undercover operation involving a Colerain Township police officer who was essentially at gunpoint. Ultimately, weapons were fired

and codefendant Shearer was struck. The juvenile court noted that perhaps for lack of a better aim or situation Shearer would have been dead.

{¶40} The court further stated that this was not "juvenile behavior," and concluded that when "look[ing] at the factors, they weighed in favor of transfer based on the serious nature of the offense." The court went on to find that this was an organized criminal activity targeting citizens. Amos was "the muscle" in the robberies. He was present at two of the robberies and he was off to the side at another one, with a gun and with drugs in another car. The court further found that Amos had a firearm under his possession, which he brandished and used, and that he was emotionally, physically, and psychologically mature enough for transfer. The court further stated that it "underst[ood] obviously the difficulty of the matter before [it], but [it] believe[d] that after weighing the circumstances here, the nature and the level of criminal activity, this [type of behavior] was not to be tolerated in this county."

{¶41} The trial court had before it the report of Dr. James Hawkins, a psychiatrist, who had prepared the court-ordered investigation into Amos's social history, education, and family situation. In his report, Dr. Hawkins stated that Amos was 15 years and eight months old and of average intelligence. He had no prior delinquencies. He had a stable home environment, and did not suffer from any mental or physical problems. Dr. Hawkins concluded the report by stating that while "there [wa]s evidence to contraindicate a bindover proceeding, the court may wish to consider the serious nature of the charges against Amos."

{¶42} Amos argues that the juvenile court placed too much emphasis on the severity of the offenses and failed to consider factors that weighed against his transfer to the common pleas court, including the fact that he had no prior delinquency

adjudications, he caused no physical harm to person or property, and that there was sufficient time to rehabilitate him in the juvenile system.

**{¶43}** But based on our review of the record, we cannot say the juvenile court abused its discretion in transferring jurisdiction of Amos's cases to the common pleas court. The trial court was entitled to consider the number and nature of offenses that Amos had committed in determining if he was amenable to rehabilitation in the juvenile system. *See State v. West,* 167 Ohio App.3d 598, 2006-Ohio-3518, 856 N.E.2d 285, ¶ 30 (4th Dist.), citing *State v. Watson,* 47 Ohio St.3d 93, 96, 547 N.E.2d 1181 (1989) (stating that "a juvenile who has demonstrated the ability to commit a major felony may require more time for rehabilitation than one whose offenses are less serious offense"). Here, the trial court had evidence that Amos had committed three aggravated robberies in less than one week.

**{¶44}** The record reflects that the trial court ordered the proper evaluations, held a hearing, discussed the factors that weighed in favor of transfer on the record, and recorded the factors on a worksheet attached to its entry transferring jurisdiction. We cannot conclude the trial court abused its discretion in determining that Amos was not amenable to rehabilitation in the juvenile system and transferring his cases to the common pleas court for prosecution as an adult. We, therefore, overrule his second assignment of error. Having found neither of Amos's assignments of error to be meritorious, we affirm the judgment of the common pleas court.

Judgment affirmed.

**MOCK** and **STAUTBERG, JJ.,** concur.

Please note:

The court has recorded its own entry this date.